**EUGENE ALKANA  State Bar No.  60411**

131 North El Molino Avenue Suite 310

Pasadena, California 91101

626-808-6792  FAX:  626-796-8170

eugenealkana@yahoo.com

Counsel for **PLAINTIFF FREE KICK MASTER, LLC.**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | | |
|---|---|---|
| **FREE KICK MASTER, LLC.** | ) | **CASE   4:15 cv 03403 PJH** |
| | ) | |
| Plaintiff, | ) | **JUDGE PHYLLIS J. HAMILTON** |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S RESPONSE TO** |
| **APPLE  (I TUNES) , INC. et al.,** | ) | **DEFENDANTS' GOOGLE'S AND** |
| | ) | **AMAZON'S MOTION TO DISMISS** |
| Defendants. | ) | **UNDER RULE 12(b)(6)** (AMENDED) |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' GOOGLE'S AND AMAZON'S MOTION TO DISMISS UNDER FED. R. CIV. P.  12(b)(6) (AMENDED) (FAILURE TO STATE A CLAIM)

   Plaintiff Free Kick Master LLC, by undersigned  counsel, asks that the Court deny

Defendants' Google and Amazon's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6).  The

reasons for this  request are fully elaborated in the Memorandum to follow.

Respectfully Submitted,

*/S/ Eugene Alkana*
_____

Eugene Alkana   60411

131 North El Molino Avenue Suite 310

Pasadena, California 91101

626-808-6792

 FAX:  626-796-8170

eugenealkana@yahoo.com

Counsel for Plaintiff Free Kick Master, LLC.


 Stanley Josselson 0025685

1276 West 3rd St. #411

Cleveland, Ohio 44113

216-696-8070

josso@att.net

 Counsel for Plaintiff Free Kick Master LLC

2
**FREE KICK MASTER'S RESPONSE TO GOOGLE**
**AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

## CERTIFICATE OF SERVICE

A copy of this **Plaintiff's Response  to Defendants' Google and Amazon's  Motion to Dismiss under Fed. R. Civ. P.  12(b)(6)** has been electronically filed on CMECF  and thereby served on all Defendants (Google, Amazon, Samsung Electronics America, and Apple (I-tunes)) on September   3, 2015.

*/S/ Eugene Alkana*

_____

Eugene Alkana   60411
131 North El Molino Avenue Suite 310
Pasadena, California 91101
626-796-8170
Email:  eugenealkana@yahoo.com
Email:  eugenealkana@mindspring.com
Counsel for Plaintiff Free Kick Master LLC

Stanley Josselson 0025685
1276 West 3rd St. #411
Cleveland, Ohio 44113
216-696-8070
josso@att.net
Counsel for Plaintiff Free Kick Master LLC

3
**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

# MEMORANDUM

## DISCUSSION OF LAW RELATED TO FED. R. CIV. P. 12(b)(6) MOTIONS

In Graham-Sult v. Clainos, 756 F.3d 724, 748 (9th Cir. 2014), the Court summarized the

standard the Complainant must meet to survive a Rule 12(b)(6)  Motion to Dismiss for failure to

state a claim for  which relief may be granted:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, ***accepted as true***, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted,[italics added])." Although for the purposes of a motion to dismiss ***we must take all of the factual allegations in the complaint as true,*** we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted). Even when dismissal of a complaint might be warranted, Federal Rule of Civil Procedure 15(a) authorizes parties to amend their complaint " with . . . the court's leave." Fed.R.Civ.P. 15(a)(2).  (Italics added).

In Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260-1261 (11th Cir. 2009), the Court stated:

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal,* 129 S.Ct. at 1950 (explaining " only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell A. Corp. v. Twombly,* 550 U.S. 544, 561-62, 570, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the prior " unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint " requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but " must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964-65 (internal citations and emphasis omitted).

More recently, in [*Ashcroft v*.] *Iqbal,* [556 U.S. 662, 129 S.Ct. 1937 (2009)], the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand " more than an unadorned, the-defendant-

**FREE KICK MASTER'S RESPONSE TO GOOGLE AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949. A complaint must state a plausible claim for relief, and " [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim " across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

## APPLICATION TO COUNT I  AND COUNT II
## OF THE PLAINTIFF'S SECOND  AMENDED COMPLAINT

The allegations in the SAC with which Defendants Google and Amazon take issue are:

19.  Defendant Amazon operates a marketplace, the "Amazon Appstore," , through

which owners of Kindle "Fire" devices can purchase programs or "apps" to use with those

devices.  Amazon, advertises the Free Kick Master Challenge APK for Kindle, as the

" Top APK" for Kindle Fire.  **See Exhibit VI**..  These games are also a click away for users

for its trademark to be used in connection with those downloads.

20.   Defendant Google, Inc., operates Google Play, a distribution platform that was

created and operates to serve as the marketplace and office online store to purchase applications

for the Android operating system.  Google allows developers of apps (programs) for Android

mobile devices to distribute those apps, including  "Free Kick Master" apps, to android device

users.  Google has never asked permission from Plaintiff to distribute "Free Kick Master" apps

to its customers for free or otherwise.. **(See Exhibit VII).**

**……..**

5

**FREE KICK MASTER'S RESPONSE TO GOOGLE**
**AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

23.  Defendants Apple, Amazon, Google, and Samsung's,  use, sale, distribution, and /or

promotion of the various "FREE KICK MASTER" apps and games  in the State of California

and the rest of the world is without authorization or consent from the Plaintiff.

24.  Defendants' use, distribution, and/or promotion of  "Free Kick Master" apps and

games  causes a likelihood of confusion, mistake or deception in the minds of the public.


 Under Plaintiff´s Count I of the SAC, invoking 15 USC 1114,

**(1)** Any person who shall, without the consent of the registrant—

**(a)**
use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark
in connection with the sale, offering for sale, distribution, or advertising of any goods or services
on or in connection with which such use is likely to cause confusion, or to cause mistake, or to
deceive; or
**(b)**
reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction,
counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles
or advertisements intended to be used in commerce upon or in connection with the sale, offering
for sale, distribution, or advertising of goods or services on or in connection with which such use
is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by
the registrant for the remedies hereinafter provided….

 Under Plaintiff´s Count II of the SAC, invoking 15 USC 1125(a):

**(a) Civil action**
**(1)** Any person who, on or in connection with any goods or services, or any container for goods,
uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any
false designation of origin, false or misleading description of fact, or false or misleading
representation of fact, which—

**(A)**  is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
connection, or association of such person with another person, or as to the origin, sponsorship, or
approval of his or her goods, services, or commercial activities by another person, or

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

(**B**) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

As stated above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, ***accepted as true***, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Also, "[f]actual allegations in a complaint need not be detailed but " must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell A. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965 (2007). In the instant matter, Plaintiff Free Kick Master LLC made factual allegations regarding Amazon's and Google's use of its trademark and/or placement of goods/services using its trademark on their websites. Plaintiff also supplemented those allegation with actual exhibits taken off of the internet to demonstrate that such uses by the Defendants were not "speculative" or theoretical, but actually existed on real webpages. This was in order to dispel any allegation that the whole SAC was nothing but a fabrication or "a formulaic recitation" of the elements of a cause of action.

Defendants complain that Plaintiff makes "no allegation that Amazon or Google had any notice regarding any infringement," (Doc. 63, page 9, line 13). They also complain that Plaintiff did not allege that they had any "knowledge." (Doc. 63, page 9, line 8, 12). This seems to ignore the fact that Plaintiff specifically alleges in the paragraph 37 of the SAC, that "[u]pon

7

**FREE KICK MASTER'S RESPONSE TO GOOGLE AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

information and belief, Defendants' acts have been willful, deliberate, and intended to interfere

with Plaintiff's use of the FREE KICK MASTER mark." The obvious conclusion is that

if Defendants indeed possessed no knowledge or notice, then they could not have deliberately

interfered with Plaintiff's trademark and their acts could not have been deliberate and

intentional.   As stated in the **DISCUSSION OF LAW ABOVE,** the "factual allegations

[supplied by Plaintiff] need not be detailed" and thus need not cover absolutely every instance

and type of infringement.  Generally, Plaintiff would argue, such  details would be worked out

during  Discovery process.


   At this point, it would probably be informative for all concerned for Plaintiff to address

the extent of knowledge and control Defendants  Amazon and Google had or should have had

about the character of the products (including infringements) they advertised and provided to the

public.

   In the case of Defendant Amazon, **Exhibit I**  (Amazon Apps & Services Developer Portal)

demonstrates the degree of control Defendant Amazon has over the development of apps and

programs.  In addition to receiving 30% of the revenue ("revenue split," **Exhibit I**, page 1of 28),

Amazon:

---"…***promotes your apps*** by using commerce and marketing features such as search

and search refinement, browse, and recommendations based on customers own purchases."

(**Exhibit I**, page 1of 28);

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

---approves apps ("In addition to submitting apps and checking their ***approval***

***status***....," (**Exhibit I**, page 2 of 28);

---"...test[s] submitted apps prior to making them available to verify that each works as

outlined.., does not impair the functionality of the mobile device...and complies with the terms

of the App Distribution and Services Agreement and [Amazon's] content guidelines..,"

(**Exhibit I**, Page 4 of 28);

--- requires the submission of "minimum assets," including a "small icon," "a thumbnail,"

"a minimum of three screenshots that accurately depict your app,"  and "a promotional image."

(**Exhibit I**, page 4 of 28);

--- Amazon's "Developer Portal" tests the app for "compatibility" and tests the app on "real

Devices."  (**Exhibit I**, page 3 of 28);

--- Amazon prepares the app by "wrap[ping] your binary with code that allows Amazon to

enforce...[its] DRM... collect analytics related to the app, evaluate and enforce [its] program

policies...." (**Exhibit I**, page 6 of 28);

---requires that "each app you submit...adhere[s] to the following content guidelines*: if*

*[Amazon] determines that an app contains, facilitates or promotes content prohibited by*

*these guidelines, [Amazon] will reject [the] ...app submission*..."  Prohibited content includes

"offensive content," "pornography," "illegal activity," "gambling with real currency,"

*intellectual property infringement*:  [Amazon]..prohibit[s] any app to which you do not have

The necessary rights to make available in Amazon or that violates ...[Amazon's] copyright

**FREE KICK MASTER'S RESPONSE TO GOOGLE**
**AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

policy..” **Exhibit I**, page 8 of 28);  (Italics added);

--- “hold[s] personal privacy in the highest regard…*[Amazon] prohibits apps that infringe*

*or have the potential to infringe upon an individual’s privacy….Celebrity images and/or*

*celebrity names cannot be any be used for commercial purposes without the permission of the*

*celebrity*…” (**Exhibit I**, page 8 of 28);  (Italics added).

---requires that “you have ownership or license rights to the code and content …included in any

app…”  (“Copyright Policy”), **Exhibit I**, page 8 of 28;

---allows apps already available on Google Play  ;  provides the option to apply Amazon’s DRM

technology; (**Exhibit I**, page 12 of 28);     and Defendant Amazon

---considers placement of apps for “featured market placement,”  such as “Highly Rated apps

and games”; **Exhibit I**, page 18 of 28.

   Defendant Amazon boasts a  very strict “anti-counterfeiting” policy:  “The sale of

counterfeit products, including any products that have been illegally replicated, reproduced,

or manufactured, is strictly prohibited.”    Also “ [Amazon is]…constantly innovating on

behalf of  [its] …*customers and working with …content owners, vendors, and sellers to improve*

*the ways [it]…detects and prevent counterfeit products*….[Amazon] encourages anyone who has

a product authenticity concern to notify [it].. and [it] will investigate it thoroughly and take any

appropriate actions.”  (See **Exhibit II**, page 1). (Italics added).

   Amazon also has a very strict policy on  “attempts to divert transactions or buyers,”  as

well as a policy on “unauthorized and improper business names.”  (See **Exhibit III**, page 1).

Thus, Defendant Amazon has a very strict self proclaimed policy of monitoring and weeding out

infringing materials.  It therefore, cannot with any credibility claim, that it had no knowledge

or notice of any infringements or that it was promoting something improperly.

   Defendant Google also has a manual on "publish[ing] apps on Google Play" (**Exhibit IV,**

page 1).   This manual teaches the app developer to:  "1.  Understand the Publishing Process,"

**Exhibit IV**, page 1);  "4. Determine your App's Content Rating" (**Exhibit IV**, page 4 of 20);

as well as other topics.  Google Play Developer Program Policies provide controls on content

such as restrictions on Sexually Explicit Material, Violence, Hate Speech, Sensitive Events,

Impersonation,  Intellectual Property, Illegal Activities and  Dangerous Products (See **Exhibit

V**, pp.1-3).


## DISCUSSION OF LAW RELATED TO THE  COMMUNICATIONS DECENCY ACT 47 USC 230 AND ITS APPLICATION TO  COUNTS IV, V, AND VI OF THE SAC


   Defendants Amazon and Google ask that the Court dismiss Counts IV, V, and VI of the

Plaintiff's Second Amended Complaint because they are allegedly barred by Section 230 of the

Federal Communications Decency Act  47 USC 230 ("CDA").   42 USC 230(c )(1) provides that


**(c) Protection for "Good Samaritan" blocking and screening of offensive material**

**(1) Treatment of publisher or speaker**
No provider or user of an interactive computer service shall be treated as the publisher or speaker
of any information provided by another information content provider.
**(2) Civil liability**
No provider or user of an interactive computer service shall be held liable on account of—

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

**(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

**(B)** any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1). [1]

An overall policy statement of the CDA can be found in <u>Doe v. Internet Brands, Inc</u>., 767 F.3d

894, 898  (9th Cir. 2014)

As the heading to section 230(c) indicates, the purpose of that section is to provide " [p]rotection for 'Good Samaritan' blocking and screening of offensive material." That means a website should be able to act as a " Good Samaritan" to self-regulate offensive third party content without fear of liability. In particular, section 230 was in part a reaction to *Stratton Oakmont, Inc. v. Prodigy Servs. Co*., 1995 WL 323710 (N.Y. S.Ct. May 24, 1995) (unpublished), a New York state court decision holding that an internet service provider became a " publisher" of offensive content on its message boards because it deleted some offensive posts but not others. [WL] at *4. Under *Stratton Oakmont* 's reasoning, a website had to choose between voluntarily removing some offensive third party content, which would expose the site to liability for the content it did not remove, or filtering nothing, which would prevent liability for all third party content. *See id*. " In passing section 230, Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on user-generated content without thereby becoming liable for all defamatory or otherwise unlawful messages that they didn't edit or delete." *Fair Housing Council v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008).… Another policy of section 230 is to " avoid the chilling effect upon Internet free speech that would be occasioned by the imposition of tort liability upon companies that do not create potentially harmful messages but are simply intermediaries for their delivery." *Delfino v. Agilent Techs., Inc*., 145 Cal.App.4th 790, 52 Cal.Rptr.3d 376, 387 (Ct. App. 2006).

In <u>Fair Housing Council of San Fernando Valley v. Roommates.Com</u>, LLC, 521 F.3d 1157,

1162 -1163 (9th Cir. 2008), the Court stated that

Section 230 of the CDA[5] immunizes providers of interactive computer services[6] against liability arising from content created by third parties.… This grant of immunity applies only if the interactive computer service provider is not also an "information content provider," which is defined as someone who is "**responsible,** in whole or in part, for the creation **or development** of" the offending content. *Id.*§ 230(f)(3). (Italics added).

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

A website operator can be both a service provider and a content provider: If it passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is "***responsible, in whole or in part" for creating or developing,*** the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content….

Also, " As [the Court]… explained in *Batzel,* the party responsible for putting information online may be subject to liability, even if the information originated with a user. *See Batzel v. Smith,* 333 F.3d 1018, 1033 (9th Cir. 2003)… ̈ Id., at 1165.

The Court in <u>Fair Housing Council</u> pointed out the Wikipedia definition of "web content development" as being : "the process of researching, gathering, organizing, and editing information for publication on  websites…Our interpretation of 'development is entirely in line with the context appropriate meaning of the term and easily fits the activities …[Defendant] engages in." <u>Id</u>., at 1168.  "A website operator who edits user-created content such as by correcting spelling, removing obscenity, or trimming for length retains his immunity for any illegality in the user created content, provided that the edits are unrelated to the illegality. However, a website operator who edits in a manner which contributes to the alleged illegality… is directly involved in the alleged illegality and thus not immune…" Id., at 1169.

In <u>Fair Housing Council,</u>  the Defendant also tried to deny "responsibility" for the content of the webpages. The Court replied: …[Defendant] is "responsible" at least "in part" for each subscriber's profile page, because every such page is a collaborative effort between [Defendant]… and the subscriber." Id., at 1167.

In the instant matter, Plaintiff Free Kick Master would draw the Court's back to the

**FREE KICK MASTER'S RESPONSE TO GOOGLE ABD AMAZON MOTION TO DISMISS 4:15 cv 03403**

prior discussion above regarding Exhibits I, II, and III (Amazon's Apps & Services Developer Portal,  Anti-Counterfeiting Policies, and Prohibited Seller Activities and Actions).

   Defendants Google and Amazon claim that Plaintiff  "seeks to place Google and Amazon in the position of publisher and to require them to review and analyze each of the hundreds of thousands of apps created by third parties."  (Doc. 63, page 6, line 23- 24).  Plaintiff believes that  have already done just that  (in the case of Amazon by virtue of the policies and procedures presented in Exhibits I, II, and III,  and in the case of Google, by virtue of the policies and procedures in Exhibits IV,  and V).  Furthermore, Amazon, in addition to collecting 30% of the revenue—and thereby profiting from its activities-- promises to promote the apps and programs (using various "commerce and marketing features" and "recommendations" to customers); approves the apps; makes certain that  the apps work as outlined and  that  the apps do not impair their host devices; tests the apps for compatibility and on real devices;  and supplements the binary code of the apps with its own binary code.

   Additionally,  Amazon strictly regulates the content of apps (censorship???); allegedly checks all apps for infringement;  allegedly makes certain that the privacy of celebrities and other individuals is not disturbed;  and, according to Amazon, prohibits use of illegally replicated or produced products. Amazon also directs that that the app submission be accompanied by an icon, thumbnail, screenshots, and promotional images.  At the very least, all of these actions on the part of Amazon point to a truly collaborative effort between Amazon and third parties in all respects  to promote the  sale and marketing of computer programs and apps. Amazon's

14

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

involvement is thus much more than that of a passive displayer of third party content.

Google, from a reading of Exhibits IV and V, has similar controls over the production and

of apps marketed on Google Play.

    The CDA contains an exception for laws pertaining to "intellectual property." Specifically,

47 USC 230 (e )(2) states that "Nothing in this section shall be construed to limit or expand any

law pertaining to intellectual property."  It is true that the Ninth Circuit held in Perfect 10, Inc.,

v. CCBill, LLC, 488 F.3d 1102, 1119 (2007)  that "we construe the term intellectual property to

mean 'federal intellectual property'."

    However, In <u>Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.,</u> 998 F.Supp.2d 890, 897- 898

(C.D.Cal. 2014), the Court considered Plaintiff's causes for " (1) trademark infringement, (2)

unfair competition, and (3) false designation of origin under the Lanham Act, 15 U.S.C. § § 1114

& 1125, and under California law…"   The Court stated:

    This Court analyzes these claims together for the purposes of this Motion. " [T]he courts
have uniformly held that common law and statutory trademark infringement are merely specific
aspects of unfair competition." Hokto Kinoko Co. v. Concord Farms, Inc., 810 F.Supp.2d 1013,
1031 (C.D. Cal. 2011) (citing New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194,
1201 (9th Cir. 1979)); see also Grey v. Campbell Soup Co., 650 F.Supp. 1166, 1173 (C.D. Cal.
1986) *(" The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. §
1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15
U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same" ).*
A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same
elements as a claim for trademark infringement under 15 U.S.C. § 1114. Brookfield Commc'ns,
Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.6 (9th Cir. 1999) (citing 15 U.S.C. § §
1114(1) & 1125; AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)).

15

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

*Furthermore, the Ninth Circuit " has consistently held that state common law claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act." Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citing Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991)).*

(Italics added).

In Eurow & O'Reilly Corp. v. Superior Manufacturing Group, Inc., CV 14-6595-RSWL

(VBKx) (CACDC), the Court struck down an affirmative defense of federal preemption based

upon the Lanham Act, stating:

Plaintiff's Twenty-Third Affirmative Defense asserts that Defendant's "state law claims are preempted by Federal Law including the Lanham Act because the state law claims are based upon the same conduct as the federal claim for infringement." Pl.'s Answer to Def.'s Countercls. ("Pl.'s Answer") 16:16-20. Defendant asserts state-law counterclaims of California common law trademark infringement, California common law unfair competition, and violations of the California Unfair Trade Practices Act. Plaintiff's allegation that such state-law claims are "preempted by Federal Law including the Lanham Act because the state law claims are based upon the same conduct as the federal claim for infringement" fails under clearly established law and is impertinent.[2] Defendant's Motion to Strike this affirmative defense is GRANTED, and Plaintiff's Twenty-Third Affirmative Defense is STRICKEN WITH PREJUDICE for failure as a matter of law.

In footnote number 2 to that opinion the Court noted that elements of trademark infringement,

unfair competition, false designation of origin under the Lanham Act and California law were the

same:

See, e.g., *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007) (noting that the analysis for trademark dilution claims under "both federal and California state law... is the same"); *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.Supp.2d 890, 897 (C.D. Cal. 2014) (noting that the elements of trademark infringement, unfair competition, and false designation of origin under the Lanham Act and California law were the same and thus could be combined into a single analysis); *Philip Morris USA Inc. v. Liu*, 489 F.Supp.2d 1119, 1123 (C.D. Cal. 2007) ("Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law.").

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

Thus, there appears to be precedent to not dismissing all of the California State Law claims asserted in the Plaintiff's SAC, as the State Law Claims fall under the "intellectual property" exception in 47 USC 230(e)(2), are based upon federal trademark infringement law, and are are "substantially congruent" to the Plaintiff's Federal Claims under the Lanham Act.

**<u>WHEREFORE</u>**, in view of the arguments presented above---

1. Plaintiff asks that Defendants' Motion to Dismiss Counts I and II be denied for the reason that Plaintiff has pleaded and presented sufficient evidence (in the form of Exhibits) in the SAC to show that: Defendants made use of Plaintiff's trademark; such use was willful, unauthorized, and deliberate; such use was intended to interfere with Plaintiff's use of its trademark; and that such use became a source of confusion and deception to the public.

2. Plaintiff asks that Defendants' Motion to Dismiss Counts IV, V, VI (State Law Claims) be denied for the reason that Plaintiff has shown Defendant were not simply passive displayers of third party content, but were "developers" (under the Communications Decency Act 47 USC 230) of the FREE KICK MASTER apps they displayed in their advertisements. Additionally, the law presented above related to the CDA "intellectual property" exception would militate against dismissal of Plaintiff's State Law Claims in Counts IV, V, and VI of the Plaintiff's SAC.

16

**FREE KICK MASTER'S RESPONSE TO GOOGLE AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

Respectfully Submitted,

*/S/ Eugene Alkana*
_____

Eugene Alkana   60411

131 North El Molino Avenue Suite 310

Pasadena, California 91101

626-808-6792

FAX:  626-796-8170

eugenealkana@yahoo.com

Counsel for Plaintiff Free Kick Master, LLC.


Stanley Josselson 0025685

1276 West 3rd St. #411

Cleveland, Ohio 44113

216-696-8070

josso@att.net

Counsel for Plaintiff Free Kick Master LLC

17

**FREE KICK MASTER'S RESPONSE TO GOOGLE
AND AMAZON MOTION TO DISMISS 4:15 cv 03403**

## <u>CERTIFICATE OF SERVICE</u>

A copy of this **Plaintiff's Response To Defendants' Google And Amazon's Motion To Dismiss Under Fed. R. Civ. P.  12(B)(6)  (Failure To State A Claim)** has been electronically filed on CMECF  and thereby served on all Defendants (Google, Amazon, Samsung Electronics America, and Apple (I-tunes)) on September 2, 2015.

*/S/ Eugene Alkana*
_____

Eugene Alkana   60411
131 North El Molino Avenue Suite 310
Pasadena, California 91101
626-796-8170
Email:  eugenealkana@yahoo.com
Email:  eugenealkana@mindspring.com
Counsel for Plaintiff Free Kick Master LLC

Stanley Josselson 0025685
1276 West 3rd St. #411
Cleveland, Ohio 44113
216-696-8070
josso@att.net
Counsel for Plaintiff Free Kick Master LLC

18

**FREE KICK MASTER'S RESPONSE TO GOOGLE AND AMAZON MOTION TO DISMISS 4:15 cv 03403**