1                                        PAGES 1 – 42

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4          BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

5    FREE KICK MASTER, LLC,                )
                                           )
6                    PLAINTIFF,            )
                                           )
7     VS.                                  ) NO. C 15-3403 PJH
                                           )
8    APPLE, INC, ET AL.,                   )
                                           )
9                                          ) OAKLAND, CALIFORNIA
                     DEFENDANT.            ) WEDNESDAY
10   _____) SEPTEMBER 30, 2015
                                           ) 9:00 O'CLOCK A.M.
11

12                    **TRANSCRIPT OF PROCEEDINGS**

13   **APPEARANCES:**

14   **FOR PLAINTIFFS:**
     **VAL SCHUROWLIEW, ESQUIRE**
15   **STANLEY L. JOSSELSON, ESQUIRE**
     1276 WEST 3RD STREET, #411
16   CLEVELAND, OHIO 44113

17   AND

18   **EUGENE ALKANA, ESQUIRE**
     131 N EL MOLINO AVENUE #310
19   PASADENA, CALIFORNIA 91101

20

21   **FURTHER APPEARANCES ON NEXT PAGE**

22   ***REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR***
                    *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*
23

24

25

1    **FURTHER APPEARANCES:**

2    **FOR THE SAMSUNG DEFENDANTS:**

3    **ARNOLD & PORTER LLP**

4    777 SOUTH FIGUEROA STREET 44TH FLOOR

5    LOS ANGELES, CALIFORNIA 90017

6    **BY:  JOHN ULIN, ESQUIRE**

7    **FOR THE GOOGLE AND AMAZON DEFENDANTS:**

8    **DURIE TANGRI LLP**

9    217 LEIDESDORFF STREET

10   SAN FRANCISCO, CALIFORNIA 94111

11   **BY:  MICHAEL H. PAGE, ESQUIRE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **SEPTEMBER 30, 2015**                          **9:00 O'CLOCK  A.M.**

2

3                       **P R O C E E D I N G S**

4           **THE CLERK:**  CALLING CIVIL CASE NUMBER 15-3403, FREE

5    KICK MASTER VERSUS APPLE INCORPORATED.

6        COUNSELS, PLEASE STEP FORWARD AND STATE YOUR APPEARANCES.

7           **MR. PAGE:**  GOOD MORNING, YOUR HONOR.  MICHAEL PAGE FOR

8    GOGGLE AND AMAZON.

9           **THE COURT:**  GOOD MORNING.  WHERE IS EVERYONE?

10          **MR. PAGE:**  IT'S AN INTERESTING QUESTION.  WE HAVEN'T

11   HEARD FROM THEM.

12          **MR. ULIN:**  THAT IS A GOOD QUESTION.

13          **THE COURT:**  WELL, THEY CHECKED IN.  WE HAVE NAMES DOWN.

14          **MR. PAGE:**  FREE KICK?  YOU GUYS FROM FREE KICK?

15          **MR. SCHUROWLIEW:**  YES.

16          **MR. PAGE:**  YOU'RE UP.

17          **MR. ULIN:**  GOOD MORNING,  YOUR HONOR. I'M JOHN ULIN

18   FROM ARNOLD & PORTER FOR THE DEFENDANT AND MOVING PARTY SAMSUNG

19   ELECTRONICS AMERICA.

20          **THE COURT:**  ALL RIGHT.  SO YOU ALL ARE REPRESENTING THE

21   DEFENSE?

22          **MR. PAGE:**  YES.

23          **THE COURT:**  ALL RIGHT.  YOU ALL ARE ON THIS SIDE.

24       PLAINTIFF'S COUNSEL, IF YOU'LL COME FORWARD, PLEASE.

25          **MR. ALKANA:**  GOOD MORNING, YOUR HONOR. EUGENE ALKANA

1    APPEARING ON BEHALF OF PLAINTIFF.

2         **THE COURT:**  FREE KICK MASTER.

3         **MR. ALKANA:**  YES, YOUR HONOR.  I DIDN'T HEAR IN THE

4    BACK.  I'M SORRY.

5         **THE COURT:**  THAT'S ALL RIGHT.

6      WHO ELSE IS HERE?

7         **MR. SCHUROWLIEW:**  VAL SCHUROWLIEW ASSISTING STANLEY

8    JOSSELSON ALSO ON BEHALF OF FREE KICK MASTER.

9         **THE COURT:**  ALL RIGHT.  GOOD MORNING.

10         **MR. JOSSELSON:**   YOUR HONOR, GOOD MORNING.  I'M STANLEY

11    JOSSELSON.  WE ARE OUT OF CLEVELAND.

12         **THE COURT:**  ALL RIGHT, GOOD MORNING.  WE'RE HERE THIS

13    MORNING ON THE DEFENDANTS' MOTIONS TO DISMISS.  WE'LL START FIRST

14    WITH AMAZON AND GOOGLE'S MOTION.  AS I UNDERSTAND IT, APPLE IS

15    NOT MOVING; HAS ANSWERED AND IS NOT PART OF THIS MOTION.

16    CORRECT?

17         **MR. PAGE:**  THAT'S CORRECT, YOUR HONOR.  ALTHOUGH THEIR

18    COUNSEL IS HERE, IF YOU HAVE ANY QUESTIONS FOR THEM.

19         **THE COURT:**  COUNSEL FOR APPLE, YOU CAN COME FORWARD, IF

20    YOU WANT.  YOU CAN PERHAPS HEAR BETTER.  YOU'RE WELCOME TO SIT AT

21    THE DEFENSE TABLE.

22      ALL RIGHT.  NOW, WE DO HAVE A JOINT MOTION FILED BY AMAZON

23    AND GOOGLE AND SAMSUNG HAS FILED AN INDIVIDUAL MOTION.  WE'LL

24    START FIRST WITH YOURS.

25         **MR. PAGE:**  OKAY, YOUR HONOR.  THANK YOU.

1      WE SEE THIS AS A VERY SIMPLE CASE.  THERE ARE BASICALLY

2   THREE DIFFERENT TRANCHES OF CLAIMS THE FIRST IS AN CONTRIBUTORY

3   TRADEMARK CLAIM.  THE LAW'S VERY CLEAR THAT IN ORDER TO STATE A

4   CONTRIBUTORY TRADEMARK INFRINGEMENT CLAIM ONE MUST ALLEGE THAT

5   THE CONTRIBUTORY INFRINGER CONTINUED TO PROVIDE SUPPORT OR

6   SERVICES TO THE INFRINGER WITH KNOWLEDGE OF THE INFRINGEMENT.

7      IN THE INTERNET SPACE ALL OF OUR CLIENTS, ALL OF THE MAJOR

8   ISPS DEAL WITH THIS PRETTY STRAIGHTFORWARDLY.  WE ALL HAVE

9   TRADEMARK NOTIFICATION SYSTEMS.  WHEN SOMEONE NOTIFIES US HAVE AN

10   ALLEGED INFRINGEMENT WE REACT BY TAKING DOWN THE INFRINGING WORK

11   AND NOTIFY THE PERSON WHO POSTED IT.

12      IF THAT PERSON GIVES US A COUNTERNOTIFICATION SAYING:

13           "NO, I'M LICENSED," OR "NO, IT'S NOT AN INFRINGEMENT,"

14   WE'LL PUT IT BACK UP.  WE BASICALLY TREAT IT LIKE A DMCA NOTICE.

15   AND THEN, THEY CAN FIGHT IT OUT IN COURT.

16      BUT ISPS ARE IN NO POSITION TO KNOW WHETHER ANY PARTICULAR

17   WORK, BE IT AN APP IN THIS CASE, OR A SONG OR A MOVIE INFRINGES

18   ANYONE'S TRADEMARK RIGHTS.  YOU KNOW, WE'RE NOT IN A POSITION TO

19   SEARCH FOR THE RIGHTS.  WE'RE NOT IN A POSITION TO MAKE A

20   DETERMINATION WHETHER THE WORK FALLS WITHIN THE CLASSES FOR WHICH

21   THE WORK IS REGISTERED.  IN THIS CASE IT DOES NOT.  WE'RE IN NO

22   POSITION TO KNOW WHETHER THEY HAVE LICENSED THE USE.  WE CAN'T

23   JUST WILLY-NILLY TAKE DOWN WORKS, AND THEN TURN AROUND AND FIND

24   OUT THAT WE'VE INTERFERED WITH A CONTRACTUAL RELATION WHEN THE

25   PERSON WHOSE WORK WE TOOK DOWN SAYS:

1          "WAIT A MINUTE.  I BOUGHT THE TRADEMARK AND I LICENSED

2     IT, AND YOU SHUT DOWN MY BUSINESS."

3     SO IN ORDER TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK

4     INFRINGEMENT YOU HAVE TO SAY THAT YOU GAVE THE ISP NOTICE, AND

5     THEY IGNORED IT.

6          AND IN THIS CASE, NO NOTICE WAS GIVEN.  NO NOTICE IS PLED.

7     THERE ARE NO FACTS ALLEGED WHATSOEVER TO ESTABLISH THAT EITHER

8     GOGGLE OR AMAZON HAD ANY KNOWLEDGE, EITHER OF THE EXISTENCE OF

9     THE TRADEMARK, OR OF THE CLAIM THAT THESE WORKS THAT WERE

10    ALLEGEDLY POSTED BY THIRD PARTIES ON OUR SITES INFRINGE THOSE

11    TRADEMARKS.

12         THERE IS A SINGLE ALLEGATION IN THE COMPLAINT THAT SAYS THAT

13    THE PLAINTIFFS TRIED TO CONTACT THE ISPS.  BUT THEN IT CITES ONLY

14    TO A LETTER TO SAMSUNG ABOUT A TOTALLY UNRELATED ISSUE.  THERE IS

15    NO ALLEGATION THAT WE EITHER GOT NOTICE FROM THE PLAINTIFFS OR

16    OBTAINED KNOWLEDGE IN ANY OTHER WAY.  IN OPPOSITION ALL THEY CAN

17    SAY ON THIS POINT IS,  AS I BELIEVE I DESCRIBED IT,

18    "BREATHTAKINGLY CIRCULAR," WHICH IS THAT THE COMPLAINT SAYS OUR

19    ACTIONS WERE WILLFUL.  AND SINCE IT SAYS THEY WERE WILLFUL THERE

20    MUST BE FACTS THAT CAUSED IT TO BE WILLFUL.

21         BUT THERE ARE NO FACTS ALLEGED.  IT'S LIKE THE EXACT FLIP OF

22    IQBAL AND TWOMBLY.  IT'S LIKE IF I STATE THE CONCLUSION YOU MUST

23    ASSUME THAT THERE EXISTS FACTS IN THE WORLD THAT WOULD LEAD A

24    TRYER OF FACT TO THAT CONCLUSION.  IT'S ENTIRELY BACKWARDS.  YOU

25    CAN'T JUST SAY IT WAS WILLFUL WITHOUT STATING ANY FACTS TO

1    SUPPORT IT.

2        SO WE BELIEVE THE CONTRIBUTORY TRADEMARK CLAIM GOES AWAY.

3        THE NEXT ONE IS A CLAIM NOR INJUNCTION.  THERE IS NO SUCH

4    THING.  IT'S A REMEDY, NOT A CLAIM.

5        AND THEN THE THIRD SET ARE THREE --

6        **THE COURT:**  YOU KEEP REFERRING TO IT AS A CONTRIBUTORY

7    TRADEMARK CLAIM.  PLAINTIFF REFERS TO IT AS A TRADEMARK CLAIM.

8    AND, INDEED, LOOKING AT THE COMPLAINT IT JUST SAYS "TRADEMARK

9    INFRINGEMENT."

10        **MR. PAGE:**  CONTRIBUTORY TRADEMARK INFRINGEMENT IS A

11    FLAVOR OF TRADEMARK INFRINGEMENT.  YOU CAN CALL IT WHATEVER YOU

12    WANT, BUT THERE'S NO ALLEGATION THAT EITHER GOGGLE OR AMAZON

13    BRANDED ANY PRODUCTS WITH THIS NAME OR USED THIS NAME IN

14    COMMERCE.

15        THE ONLY ALLEGATION IS THAT SOMEONE ELSE CALLED THEIR

16    APPLICATION THIS, AND THEN PLACED IT ON OUR WEBSITE.

17        THEY DON'T DISPUTE IN THEIR OPPOSITION THAT IT'S A

18    CONTRIBUTORY TRADEMARK CLAIM.

19            **THE COURT:**  ALL RIGHT.

20            **MR. PAGE:**  IT CLEARLY IS.

21            **THE COURT:**  YOU'RE JUST CONSTRUING, THOUGH, THE FIRST

22    CAUSE OF ACTION WHICH DOESN'T USE THAT WORD AS "CONTRIBUTORY."

23            **MR. PAGE:**  RIGHT.  IT'S ALL IT CAN BE.  THERE'S NO

24    ALLEGATIONS THAT WE EVER USED THE MARK IN ANY WAY.  JUST THAT THE

25    THIRD PARTIES USED IT ON PRODUCTS THEY CREATED AND THEN PUT UP

1   FOR SALE ON OUR WEBSITES.

2        AND THEN, THE THIRD TRANCHE ARE THREE STATE LAW CLAIMS WHICH

3   ARE BARRED BY CDA SECTION 230.  UNDER CC BILL, ALL NONFEDERAL IP

4   CLAIMS AGAINST ISPS ARE BARRED TO THE EXTENT THAT THEY SEEK TO

5   HOLD THE ISP RESPONSIBLE FOR THE SPEECH OR ACTS OF A THIRD PARTY.

6   AND THAT'S EXACTLY WHAT WE HAVE HERE.  THIRD PARTIES ALLEGEDLY

7   USED THEIR MARK ON PRODUCTS AND POSTED THEM ON OUR WEBSITE.

8        THOSE CLAIMS ARE BARRED BY THE CDA.  THE OPPOSITION, QUITE

9   FRANKLY, SORT OF WANDERS OFF INTO LANHAM ACT PREEMPTION AND A

10  DISCUSSION OF THE FACT THAT STATE AND FEDERAL TRADEMARK RULES ARE

11  SIMILAR.  BUT NONE OF THAT HAS ANYTHING TO DO WITH SECTION 230

12  PREEMPTION.

13       I MEAN, THIS IS -- I THINK THE CLOSEST CASE ON THIS WOULD BE

14  ACTUALLY MY OWN, THE CHUBBY CHECKER CASE IN FRONT OF JUDGE ALSUP

15  WHERE A MUCH MORE FAMOUS MARK WAS USED ON AN APP THAT WAS POSTED

16  TO PALM'S STORE.  ALL OF THE SAME ARGUMENTS WERE MADE THAT, YOU

17  KNOW, THE APP STORES PROVIDE GUIDELINES.  AND STKS TO HELP PEOPLE

18  WRITE APPS AND RULES AND THEY POLICE THEIR SITES.

19       NONE OF THAT VITIATES SECTION 230 IMMUNITY.  THE BOTTOM LINE

20  IS IF WE DIDN'T WRITE IT AND WE DIDN'T -- AND WE DIDN'T NAME IT

21  AND WE DIDN'T -- WE CAN'T BE HELD LIABLE UNDER ANY STATE CLAIMS.

22            **THE COURT:**  ALL RIGHT.  AND WITH REGARD TO THE THIRD

23  CAUSE OF ACTION WHICH YOU DIDN'T ADDRESS I ASSUME IT'S A

24  INJUNCTIVE RELIEF CLAIM.

25            **MR. PAGE:**  YES.  IT'S NOT A CAUSE OF ACTION.  IT'S A

1    REMEDY.

2              **THE COURT:**  OKAY.

3              **MR. PAGE:**  THE OTHER, JUST FOR THE RECORD, ALSO, WE

4    WOULD OBJECT TO THE DEGREE THAT THEIR OPPOSITION RELIES LARGELY

5    ON MATERIAL THAT'S NOT IN THE COMPLAINT.

6              **THE COURT:**  OKAY.  ALL RIGHT.  PLAINTIFF'S COUNSEL?

7              **MR. SCHUROWLIEW:**  YOUR HONOR, VAL SCHUROWLIEW,

8    S-C-H-U-R-O-W-L-I-E-W.  I WORK WITH STANLEY LOUIS JOSSELSON AT

9    STANLEY JOSSELSON COMPANY LPA IN CLEVELAND, OHIO.  AND I'M HERE

10   ON BEHALF OF PLAINTIFF FREE KICK MASTER.  AND I'M RESPONDING TO

11   THE MOTION FILED BY GOGGLE AMAZON.

12      OKAY.  AS THE GENTLEMAN THAT PRECEDED ME STATED THAT THE

13   COMPLAINT DID NOT ALLEGE ANY KIND OF KNOWLEDGE.  WELL, THERE'S

14   ACTUALLY FOUR SECTIONS IN THE COMPLAINT THAT ACTUALLY DO.

15      I WOULD DIRECT THE COURT'S ATTENTION, IF WOULD IT PLEASE, TO

16   COUNT NUMBER 23, WHICH IS DEFENDANTS' APPLE, AMAZON, GOOGLE AND

17   SAMSUNG'S --

18             **THE COURT:**  EXCUSE ME.  EXCUSE ME.  COUNT NUMBER 23?

19             **MR. SCHUROWLIEW:**  YEAH.  IT'S PARAGRAPH NUMBER 23 OF

20   THE SECOND-AMENDED COMPLAINT.  IT'S BASICALLY FOUR DIFFERENT

21   PARAGRAPHS.  THERE'S PARAGRAPH 23, 33, 36 AND 41.  AND

22   PLAINTIFF --

23             **THE COURT:**  COULD YOU GO THROUGH THOSE NUMBERS A LITTLE

24   MORE SLOWLY?

25             **MR. SCHUROWLIEW:**  SURE.  OKAY. PLAINTIFF – LET'S SEE,

1   23 STATES THAT THE USE OF THE TRADEMARK WAS WITHOUT CONSENT OF

2   THE PLAINTIFF.  PLAINTIFF NEVER CONSENTED TO ANYTHING.

3       PLAINTIFF KNEW THAT THE DEFENDANTS, INCLUDING GOGGLE AND

4   AMAZON, WERE -- AND GOGGLE AMAZON AND SAMSUNG, FOR THAT MATTER --

5   WERE USING THE TRADEMARK.

6       NUMBER 33 STATES THAT THEY WILL CONTINUE TO USE IT.

7   ATTEMPTS TO COMMUNICATE.  FOR EXAMPLE, WE GAVE ONLY AN EXAMPLE OF

8   DEFENDANT SAMSUNG.  BUT I'M SURE WITH FURTHER DISCOVERY WE WILL

9   BE ABLE TO FIND OTHER INSTANCES OF COMMUNICATION WITH THE OTHER

10  DEFENDANTS.

11      THIS IS, YOUR HONOR, NOT A MOTION FOR SUMMARY JUDGMENT.

12  THIS IS A PLEADING.  AND WE HAVE TRIED TO, WITH MANY SUPPLEMENTS

13  AND MANY EXHIBITS, AS YOU HAVE SEEN, TO SUPPLEMENT IT AS MUCH AS

14  WE CAN.

15      THE OTHER PARAGRAPH --

16          **THE COURT:**  WHAT DO YOU --

17          **MR. SCHUROWLIEW:**  WHAT WE'RE BASICALLY SAYING IS THAT

18  WE --

19          **THE COURT:**  EXCUSE ME.  LET ME ASK A QUESTION.

20          **MR. SCHUROWLIEW:**  I'M SORRY.

21          **THE COURT:**  YOU BROUGHT UP THE ISSUE THAT THIS IS NOT A

22  MOTION FOR SUMMARY JUDGMENT.

23          **MR. SCHUROWLIEW:**  RIGHT.

24          **THE COURT:**  YET THERE ARE STACKS OF PAPERS THAT HAVE

25  BEEN APPENDED NOT ONLY TO THE COMPLAINT --

```
 1              MR. SCHUROWLIEW:  RIGHT.

 2              THE COURT:  -- BUT TO YOUR BRIEF, WHICH IS A LITTLE

 3    UNUSUAL --

 4              MR. SCHUROWLIEW:  RIGHT.

 5              THE COURT:  -- BECAUSE THE BRIEF DOESN'T AUTHENTICATE

 6    THE EXHIBITS.

 7              MR. SCHUROWLIEW:  RIGHT.

 8              THE COURT:  IT'S NOT ATTACHED ORDER A DECLARATION.

 9              MR. SCHUROWLIEW:  RIGHT.

10              THE COURT:  THIS IS A MOTION FOR A RULING ON THE

11    PLEADINGS.  WHY IS IT THAT I SHOULD EVEN CONSIDER THESE DOZENS OF

12    EXHIBITS THAT YOU'VE ATTACHED?

13              MR. SCHUROWLIEW:  WELL, THE PLAINTIFFS HAVE

14    STATED -- I'M SORRY -- THE DEFENDANTS HAVE STATED WE HAVE NOT

15    COMPLIED WITH THE REQUIREMENTS OF IQBAL AND -- ASHCROFT AND

16    IQBAL.  AND WE'RE SIMPLY SAYING THAT THERE EXISTS THIS EVIDENCE

17    THAT WE WILL BE ABLE LATER TO PRODUCE THAT SUBSTANTIATES OUR

18    COMPLAINT.

19              THE COURT:  BUT IQBAL AND TWOMBLY DON'T CONTEMPLATE

20    THAT YOU'LL BE ABLE TO APPEND EXHIBITS THAT WILL TAKE THE PLACE

21    OF PLEADING FACTS.  AND WE'RE TALKING TWO DIFFERENT THINGS.  YOU

22    HAVE AN EVIDENTIARY PROBLEM.  YOU'VE ATTACHED A BUNCH OF THINGS

23    TO YOUR --

24              MR. SCHUROWLIEW:  RIGHT.

25              THE COURT:  -- COMPLAINT.  YOU'VE ALSO ATTACHED A BUNCH
```

1   OF THINGS YOUR OPPOSITION.  AND IT SEEMS TO ME THAT THOSE ARE THE

2   ONES YOU ARE RELYING UPON TO SHOW KNOWLEDGE, THE ONES YOU'VE

3   ATTACHED TO YOUR BRIEF.  HOW ARE THOSE ADMISSIBLE?  UNDER WHAT

4   RULE OF EVIDENCE WOULD THOSE BE ADMISSIBLE ON THIS MOTION?

5        AND, STANDING ALONE, WHY ARE THEY ADMISSIBLE SIMPLY BECAUSE

6   THEY ARE STAPLED TO A BRIEF WITH NO AUTHENTICATING DECLARATION?

7             **MR. SCHUROWLIEW:**  WELL, YOU ARE ABSOLUTELY RIGHT ABOUT

8   THAT, YOUR HONOR.  BUT THEY ARE PROVIDED AS EXAMPLES RATHER THAN

9   AS -- TO STATE THAT WE ARE ABLE TO OBTAIN DISCOVERY WHEN THE TIME

10  COMES IN ORDER TO PROVIDE EVIDENCE THAT THEY DID KNOW, THAT THE

11  DEFENDANTS DID KNOW ABOUT ALL OF THESE THINGS.

12            **THE COURT:**  THAT DOESN'T MAKE THEM ADMISSIBLE.

13            **MR. SCHUROWLIEW:**  RIGHT.

14            **THE COURT:**  I CANNOT RELY UPON SOMETHING THAT IS SIMPLY

15  ATTACHED TO YOUR BRIEF.

16            **MR. SCHUROWLIEW:**  RIGHT.  WELL, IN ANY CASE --

17            **THE COURT:**  YOU NEED TO MAKE YOUR ARGUMENT WITHOUT

18  REFERENCE TO THOSE DOCUMENTS.

19            **MR. SCHUROWLIEW:**  RIGHT.  WELL, WHAT I'M DOING AT THIS

20  POINT, YOUR HONOR, IS SIMPLY CITING THE PARAGRAPHS OF THE

21  COMPLAINT WHERE WE DO ALLEGE KNOWLEDGE ON THE PART OF THE

22  DEFENDANTS.

23       AND THOSE PARAGRAPHS WOULD BE 23, AS I STATED, 33, WHICH

24  SAYS THAT THE PLAINTIFFS HAVE ATTEMPTED TO COMMUNICATE AS AN

25  EXAMPLE WITH DEFENDANT SAMSUNG.  THEIR ATTEMPTS TO COMMUNICATE

1  HAVE BEEN IGNORED.

2      WE ALSO PROVIDED A STATEMENT IN --

3          **THE COURT:**  THIS IS AMAZON AND GOGGLE'S MOTION.

4          **MR. SCHUROWLIEW:**  RIGHT.

5          **THE COURT:**  SO WE'RE NOT TALKING ABOUT SAMSUNG YET.

6          **MR. SCHUROWLIEW:**  RIGHT.  I UNDERSTAND THAT.  BUT

7  SIMILAR TO SAMSUNG, THE PLAINTIFF HAS MADE ATTEMPTS TO

8  COMMUNICATE WITH GOGGLE AND AMAZON.

9          **THE COURT:**  IS THAT ALLEGATION IN THE COMPLAINT?

10          **MR. SCHUROWLIEW:**  WELL, IF I MAY READ IT.

11          **THE COURT:**  JUST TELL --

12          **MR. SCHUROWLIEW:**  "ATTEMPTS TO COMMUNICATE WITH

13      DEFENDANTS HAVE BEEN FRUITLESS.  PLAINTIFF'S ATTEMPTS TO

14      COMMUNICATE FOR" -- AND THEN, IN QUOTES -- IN PARENTHESES:

15      "FOR EXAMPLE, WITH DEFENDANT SAMSUNG, EXHIBIT 18 HAVE

16      BEEN IGNORED.  PLAINTIFF HAS GOOD REASON TO BELIEVE THAT ALL

17      THE DEFENDANTS WILL CONTINUE ADVERTISING, SELLING AND EVEN

18      PROVIDING FREE DOWNLOADS OF FREE KICK MASTER FOR THE

19      FORESEEABLE FUTURE."

20          **THE COURT:**  AND THAT'S FROM PARAGRAPH 33?

21          **MR. SCHUROWLIEW:**  THAT'S PARAGRAPH 33 OF THE

22  SECOND-AMENDED COMPLAINT.  I'M LOOKING RIGHT AT IT.

23          **THE COURT:**  OKAY.

24          **MR. SCHUROWLIEW:**  AND THEN, PARAGRAPH 36, IF I MAY READ

25  IT TO YOUR HONOR:

1          "UPON INFORMATION AND BELIEF DEFENDANTS' ACTS HAVE BEEN

2     WILLFUL, DELIBERATE AND INTENDED TO INTERFERE."

3          **THE COURT:**  A LITTLE MORE SLOWLY.

4          **MR. SCHUROWLIEW:**  I'M SORRY.  OKAY.

5          "DEFENDANTS' ACTS HAVE BEEN WILLFUL, DELIBERATE AND

6     INTENDED TO INTERFERE WITH PLAINTIFF'S USE AND INTENDED USE

7     OF THE FREE KICK MASTER MARK.  TO ADD INSULT TO INJURY THE

8     DOWNLOADS HAVE BEEN OFFERED AT NO COST."

9          INTENT AND WILLFULNESS AND DELIBERATENESS CERTAINLY IMPLIES

10   KNOWLEDGE.

11         **THE COURT:**  OKAY.

12         **MR. SCHUROWLIEW:**  OKAY?  AND, FINALLY, 41, IS:

13         "THE PUBLIC AND OTHERS ARE LIKELY TO BELIEVE THAT

14    DEFENDANTS' GOODS AND SERVICES ARE PROVIDED BY, SPONSORED

15    BY, APPROVED BY, LICENSED BY, AFFILIATED WITH OR IN SOME WAY

16    LEGITIMATELY CONNECTED WITH THE PLAINTIFF WHICH HAS CAUSED

17    OR WILL CAUSE DAMAGE AND INJURY TO THE PLAINTIFF IN TERMS OF

18    ITS ABILITY TO THE PROMOTE ITS SPORTING EVENTS AND VARIOUS

19    COMPUTER APPS AND GAMES DERIVED THEREFROM."

20    THE OTHER THING IS THAT WE HAVE LATELY DISCOVERED -- AND

21   THIS, AGAIN, IS PROBABLY NOT RELEVANT, BUT WE DISCOVERED THAT

22   THEY ALSO USED THE PLAINTIFFS' -- THE PLAYERS' LIKENESSES AND

23   THEIR NAMES IN SOME OF THEIR PRODUCTS THAT THEY HAVE -- THAT

24   GOGGLE HAS ADVERTISED, THAT GOGGLE AND AMAZON HAVE ADVERTISED.

25         SO IT'S PROBABLY NOT RELEVANT AT THIS POINT, BUT I THOUGHT I

1    WOULD JUST BRING THAT UP.

2         THE OTHER THING THAT THEY -- WHAT WE'D LIKE ALSO TO SAY

3    ABOUT THE SECOND POINT ABOUT THE INJUNCTIVE RELIEF, THE

4    DEFENDANTS ARE CORRECT.  THE INJUNCTIVE RELIEF IS NOT A SEPARATE

5    COUNT, IN AND OF ITSELF, AND THAT GOES WITH OTHER COUNTS.  SO

6    THAT'S SOMETHING THAT THEY ARE CORRECT ABOUT.

7         HOWEVER, WE DON'T BELIEVE THAT THEY ARE CORRECT ABOUT THE

8    CDA, THEIR POSITION ON THE CDA.  CDA WAS ORIGINALLY -- THE

9    COMMUNICATIONS DECENCY ACT WAS ORIGINALLY ENACTED TO PROMOTE IN

10   ORDER FOR PROVIDERS OF INTERNET SERVICES, IN ORDER FOR THEM TO BE

11   ABLE TO CLEAN UP WHATEVER THIRD PARTIES POST ON THEIR WEBSITE

12   WITHOUT ANY KIND OF REPERCUSSIONS.

13        AND SO IN ORDER TO PROMOTE -- IN ORDER TO PROMOTE FREEDOM OF

14   EXPRESSION THE CONGRESS DECIDED THAT -- OBVIOUSLY THE CONGRESS

15   DECIDED THAT IT WAS GOING TO ALLOW THE INTERNET PROVIDERS NOT TO

16   HAVE ANY LIABILITY FOR POSTINGS MADE BY THIRD PARTIES.

17        HOWEVER, THIS CASE IS NOT JUST A MATTER OF POSTINGS BEING

18   MADE BY THIRD PARTIES.  THIS IS A CASE THAT INVOLVES POSTINGS BY

19   THIRD PARTIES WITH GOOGLE AND AMAZON MAKING MONEY ON THESE

20   POSTINGS.

21        THE DEFENDANTS WOULD CLAIM THAT THINGS ARE POSTED AND GOGGLE

22   AND AMAZON HAVE NO CONTROL OVER ANYTHING.  THAT THINGS ARE SIMPLY

23   POSTED, AND THEY JUST STAY THERE.  AND THEN, WHEN GOGGLE AND

24   AMAZON ARE NOTIFIED ABOUT THINGS, AS FROM WHAT I COULD UNDERSTAND

25   FROM WHAT THE GENTLEMAN PRIOR TO ME STATED, THEY HAVE NO CONTROL

1   OVER ANYTHING.

2        IT'S JUST POSTED SORT OF LIKE THE THRIFT STORE OF APPS.  BUT

3   QUITE TO THE CONTRARY, GOGGLE AND AMAZON HAVE VERY STRICT

4   PROCEDURES BY WHICH THEY VET AND LOOK OVER THINGS THAT THEY POST.

5        IT WOULD BE COMPLETELY UNIMAGINABLE THAT THEY WOULD POST

6   JUST RANDOM THINGS IN THEIR APP STORES AND HAVE PEOPLE COME IN

7   AND JUST BUY THESE THINGS WITHOUT ACTUALLY GOING THROUGH THEM AND

8   SEEING THAT THEY MEET APPROPRIATE STANDARDS.

9            **THE COURT:**  ARE THERE FACTS ALLEGED IN THE COMPLAINT

10  THAT, INDEED, THERE WAS SOME SORT OF VETTING PROCESS?  ARE YOU

11  SUGGESTING THAT THEY VETTED THIS APP AND SHOULD HAVE KNOWN THAT

12  THE APP WAS AN INFRINGING USE OF YOUR CLIENT'S MARK?

13           **MR. SCHUROWLIEW:**  AND, WELL --

14           **THE COURT:**  CAN YOU ANSWER THAT QUESTION?

15           **MR. SCHUROWLIEW:**  WELL, THE FIRST THING IS THAT THE

16  FEDERAL GOVERNMENT'S WEBSITE DOES CONTAIN THE TRADEMARK.  SO IF

17  WE COULD GO IN AND LOOK IT UP IN 30 SECONDS, THEY COULD DO IT, AS

18  WELL.

19       NOW, CLEARLY THE SECOND-AMENDED COMPLAINT DID NOT CONTAIN

20  VERY MUCH OF ANYTHING AT ALL ABOUT THE SPECIFIC VETTING PROCESS

21  THAT THESE DEFENDANTS GO THROUGH.

22           **THE COURT:**  ARE THERE ANY FACTS THAT WOULD -- THAT

23  ASSERT THAT YOUR CLIENT NOTIFIED AMAZON AND GOOGLE THAT THE MARKS

24  WERE APPEARING ON THEIR WEBSITE AND WERE INFRINGING OF YOUR

25  CLIENT'S MARK?

1           **MR. SCHUROWLIEW:**  I PERSONALLY DON'T KNOW OF ANY AT

2    THIS POINT EXCEPT FOR WHAT IS STATED IN THE COMPLAINT.  BUT I'M

3    SURE WE COULD FIND OTHERS WHEN WE LOOK.

4           I PERSONALLY DON'T KNOW OF ANY MYSELF AT THIS POINT.  AND I

5    HAVE TO BE HONEST WITH YOU, I DON'T.

6           **THE COURT:**  WELL, YOU DESCRIBE ATTEMPTS AT

7    COMMUNICATION.  WHAT WERE THE NATURE OF THE ATTEMPTS AT

8    COMMUNICATING WITH THE DEFENDANTS?

9           **MR. SCHUROWLIEW:**  FROM MY UNDERSTANDING, PHONE CALLS,

10   SPEAKING WITH PEOPLE.  THAT IS ALL THAT I KNOW OF RIGHT NOW.

11          **THE COURT:**  BY YOUR CLIENT.

12          **MR. SCHUROWLIEW:**  RIGHT.  BY MY CLIENT OR ITS

13   REPRESENTATIVES.  OR ITS REPRESENTATIVES.  BUT WE WOULD HAVE TO

14   DO FURTHER DISCOVERY ON THAT.

15          **THE COURT:**  WELL, ISN'T THAT CALLED "PREFILING

16   INVESTIGATION"?

17          **MR. SCHUROWLIEW:**  WELL, YES, IT IS.

18          **THE COURT:**  IT'S USUALLY FROM THE OPPOSING PARTY.

19   ISN'T THIS WITHIN YOUR CLIENT'S KNOWLEDGE?

20          **MR. SCHUROWLIEW:**  AND WE'VE DONE QUITE A BIT OF

21   PREFILING INVESTIGATION.  AND IT SEEMS LIKE WE JUST KEEP DOING

22   MORE AND MORE AND MORE INVESTIGATION.  AS THE CASE DEVELOPS WE

23   SIMPLY DO MORE AND MORE INVESTIGATION.  WE'VE TRIED TO DO AS MUCH

24   INVESTIGATION AS WE COULD.  AND THERE SEEMS TO BE MORE AND MORE

25   INVESTIGATION FORTHCOMING.

1          **THE COURT:**  WELL, OBVIOUSLY THE KNOWLEDGE OF THE

2    DEFENDANTS IS CRITICAL, AND THERE'S A DEARTH OF FACTS THAT

3    ESTABLISH IT.  YOU HAVE THE CONCLUSION, BUT YOU DON'T HAVE ANY

4    REAL -- ANY SPECIFIC FACTS THAT WOULD ESTABLISH KNOWLEDGE ON

5    THEIR PART.  AND YOUR VIEW IS JUST ALLEGING THAT THEY KNEW IS

6    SUFFICIENT?

7          **MR. SCHUROWLIEW:**  UNDER IQBAL, PROBABLY NOT.

8          **THE COURT:**  OKAY.

9          **MR. SCHUROWLIEW:**  NOW --

10         **THE COURT:**  AND YOU ALSO ALLEGE THAT THEY USED THE

11   MARK.  IT'S NOT CLEAR TO ME IN WHAT WAY THEY USED THE MARK.

12         **MR. SCHUROWLIEW:**  THEY USED THE MARK IN THEIR COMPUTER

13   GAMES.  THEY USE THE MARK IN THE -- DEFENDANTS' GOGGLE AND AMAZON

14   PUT COMPUTER GAMES INTO THEIR WEBSITE THAT WERE CALLED "FREE KICK

15   MASTER."  AND THAT IS IN THE COMPLAINT.  THAT IS IN THE

16   SECOND-AMENDED TO COMPLAINT.  THERE WERE EVEN PHOTOGRAPHS PUT

17   INTO THE SECOND-AMENDED COMPLAINT AS IN THE EXHIBITS THAT SHOWED

18   WHAT WAS GOING ON.

19         **THE COURT:**  ARE YOU TAKING THE POSITION THAT THEY WERE

20   THE PROVIDERS OF THE CONTENT?

21         **MR. SCHUROWLIEW:**  WE ARE TAKING THE POSITION THAT THEY

22   WERE -- THAT THESE APPLICATIONS WERE POSTED ON THEIR WEBSITES.

23   THEY PROFITED FROM THESE APPLICATIONS.  THEY COLLECTED A CERTAIN

24   AMOUNT OF MONEY FROM THE SALE OF THESE APPLICATIONS.

25         **THE COURT:**  BUT THEY WEREN'T THE AUTHOR.  ARE YOU

1    ALLEGING THEY WERE THE AUTHOR OF THE APPLICATION?

2           **MR. SCHUROWLIEW:**  I'M NOT ALLEGING THAT THEY WERE THE

3    ORIGINAL AUTHOR, BUT THEY HAD CERTAINLY SOMETHING TO DO WITH THE

4    APPLICATION GOING ON THE WEBSITE.  THOSE APPLICATIONS HAD TO GO

5    THROUGH A VETTING PROCESS, AS WE LATER DISCOVERED.

6           **THE COURT:**  OKAY.  OKAY.

7           **MR. SCHUROWLIEW:**  SO IT'S NOT LIKE PEOPLE JUST COME IN

8    AND PUT THIS STUFF UP, AND IT JUST SITS THERE.  THEY ACTUALLY

9    HAVE TO GO THROUGH SOME SORT OF PROCESS.  WHETHER IT'S TO CHECK

10   TO SEE THAT IT'S NOT DEFAMATORY, TO CHECK TO SEE IF IT'S NOT

11   PORNOGRAPHIC, TO CHECK TO SEE IF THERE'S NO ILLUSTRATIONS OF DRUG

12   USE ON THERE, TO CHECK TO SEE IF THERE'S NOTHING HORRIBLY

13   OBJECTIONABLE.  IN CERTAIN CASES TO CHECK TO SEE IF THERE'S

14   NOTHING POLITICALLY INCORRECT IN THERE, TO SEE IF IT DOESN'T

15   OFFEND ANYBODY'S SENSIBILITY, TO SEE IF IT DOESN'T CONTAIN

16   NEEDLESS VIOLENCE.  I MEAN, ALL OF THESE THINGS ARE CHECKED.

17   OTHERWISE, EVERYBODY WOULD BE PUTTING EVERYTHING UP ON THERE.

18          **THE COURT:**  AND THAT PROCESS, DOES THAT AMOUNT TO USE

19   AND KNOWLEDGE, OR JUST ONE OF THE TWO?

20          **MR. SCHUROWLIEW:**  I THINK IT WOULD AMOUNT TO KNOWLEDGE.

21          **THE COURT:**  AND USE?

22          **MR. SCHUROWLIEW:**  BECAUSE IN ORDER FOR THEM TO -- IN

23   ORDER FOR THEM -- ONCE THEY HAVE DONE THAT, ONCE THEY HAVE GONE

24   THROUGH THAT, THEY KNOW WHAT THOSE APPLICATIONS CONTAIN.

25   OTHERWISE, THEY WOULDN'T PUT THEM UP.  IF THEY GO THROUGH THIS

1    VETTING PROCESS AND THIS FILTERING PROCESS SOMEBODY THERE HAS TO

2    KNOW ABOUT IT BECAUSE THEY ARE LOOKING AT IT.

3            **THE COURT:**  BUT WOULD THEY NECESSARILY KNOW BY GOING

4    THROUGH THIS PROCESS THAT THE MARKS ARE INFRINGING?

5            **MR. SCHUROWLIEW:**  IF THEY SAW THE VIDEO, WHICH THEY DO,

6    IT SEEMS TO ME THAT THEY DO WATCH THE VIDEOS OR THEY WATCH THE --

7    PLAY THE APPS THEY CAN LOOK AT IT AND THEY CAN SEE THE NAME.

8    THEY CAN SEE SOMEBODY PLAYING A SOCCER GAME.  AND WHEN THEY SEE

9    THE LOGO ALL THEY HAVE DO IS GO TO THE TRADEMARK WEBSITE OR THE

10   COPYRIGHT WEBSITE, TYPE IN THREE WORDS AND IT POPS UP.

11       I DON'T THINK THAT'S ASKING TOO MUCH, YOUR HONOR.  IT ONLY

12   TAKES LIKE 25 SECONDS.  IF THEY CAN DO ALL OF THESE OTHER THINGS

13   THEN THEY CERTAINLY CAN DO THAT.

14           **THE COURT:**  OKAY.

15           **MR. SCHUROWLIEW:**  I DON'T THINK IT'S EXTREMELY

16   BURDENSOME TO DO ALL THAT.  THEY SAY THAT THEY ARE NOT THE

17   PUBLISHER OF ONE-AND-A-HALF MILLION APPS.  WELL, THEY CERTAINLY

18   CHECK THEM.

19       NOW, GRANTED YOU ARE ABSOLUTELY CORRECT THAT WE DID NOT

20   PROVIDE ALL THOSE -- ALL THAT PAPERWORK ON THEIR PRODUCT

21   DEVELOPMENT FROM THEIR PRODUCT DEVELOPMENT WEBSITE.  WE PROVIDED

22   THAT LATER ON IN OUR BRIEFS OPPOSED TO THEM.

23       BUT THE POINT IS IT DOES EXIST.  THEY ACTUALLY DO SOMETHING

24   BESIDES ALLOW PEOPLE SIMPLY TO POST THINGS RANDOMLY, AT WILL,

25   WITHOUT HAVING ANY KNOWLEDGE OF ANYTHING.

1     AND I THINK IF THEY ARE TRYING TO ASSERT THAT, THEN IT'S

2  ABSOLUTELY WRONG AND IT'S NOT TRUE.  THEY HAVE TO KNOW WHAT IS

3  BEING POSTED ON THERE, WHAT IS BEING PUT INTO THEIR APP STORE AND

4  WHAT IS BEING PUT ON THEIR WEBSITE.

5     IT WOULD BE RIDICULOUS TO THINK THAT THEY DIDN'T.  AND THEY

6  HAVE THESE DEVELOPMENT WEBSITES WHERE THEY TELL PEOPLE WHAT TO

7  DO.

8          **THE COURT:**  BUT CLEARLY KNOWING THAT AN APP IS BEING

9  POSTED AND AVAILABLE FOR DOWNLOAD DOESN'T NECESSARILY MEAN THAT

10  ONE HAS KNOWLEDGE THAT IT'S INFRINGING.

11          **MR. SCHUROWLIEW:**  I SUPPOSE THEY COULD BE BLIND TO IT.

12  I SUPPOSE THEY COULD JUST DELIBERATELY AVOID DOING IT ALTOGETHER.

13  THEY COULD JUST COLLECT THE MONEY.  IF THAT'S WHAT THEY WANT TO

14  DO, FINE.  THEY CAN COLLECT THEIR 30 PERCENT.  THEY CAN GO HOME

15  AND SAY:

16          "WE DON'T KNOW ANYTHING ABOUT ANYTHING.  WE DON'T WANT

17       TO KNOW ANYTHING ABOUT ANYTHING?  POST WHATEVER YOU WANT.

18       WE'RE COLLECTING OUR 30 PERCENT.  YOU TAKE THE CONSEQUENCES.

19       WE'RE GOING TO KEEP OUR MONEY, AND WE'RE GOING TO GO ON AND

20       WE'RE GOING TO POST EVERYTHING.  AND WE JUST COLLECT OUR

21       MONEY, AND WE'RE HAPPY.  AND EVERYBODY ELSE GETS ALL THE

22       PROBLEMS WITH THE LAWSUITS AND EVERYTHING ELSE."

23       THAT CERTAINLY PROVIDES A GOOD WAY FOR THEM TO HAVE AN OUT

24  TO MAKE ALL KINDS OF MONEY OFF OF EVERYBODY ELSE AND NOT SUFFER

25  ANY CONSEQUENCES WHATSOEVER.  THAT'S FINE.  IF THAT'S THE WAY

1   IT'S GOING TO BE, THEN THAT'S FINE.

2       BUT I'M JUST BRINGING THIS UP THAT WE FEEL THAT THEY HAVE

3   COLLECTED ALL KINDS OF MONEY.  NOT JUST FROM FREE KICK MASTER.  I

4   MEAN, THEY HAVE GIVEN THE FREE KICK MASTER APPS AWAY.  THEY

5   ADVERTISE "WE'RE GIVING THEM AWAY."

6       WHETHER APPLE DID THAT OR GOGGLE DID THAT OR SAMSUNG DID

7   THAT, WHOEVER DID THAT.  THEY ARE GIVING THESE THINGS AWAY.

8   OKAY.  THEY ARE NOT COLLECTING MONEY.  BUT WHEN THEY DO THEY

9   COLLECT MONEY.  ON SOME OF THESE PRODUCT DEVELOPMENT PORTALS THEY

10  TALK ABOUT A 70/30 SPLIT.

11      THESE PEOPLE ARE GETTING MONEY FROM WHATEVER THEY ARE DOING.

12  AND IF THEY ARE ALLOWED TO GET AWAY WITH THIS BECAUSE OF THEIR

13  RELIANCE ON THE CDA, OR ANYTHING ELSE LIKE THAT, YOU KNOW THEY

14  GET AWAY WITH IT, BUT THEN WE HAVE TO TURN AROUND.  WE HAVE TO GO

15  SUE ALL OF THESE PEOPLE IN CHINA, OR WHEREVER IT IS, THAT ARE

16  JUST PRODUCING THESE THINGS AND POSTING IT ON GOGGLE AND AMAZON.

17  THAT'S BASICALLY WHAT IT COMES DOWN TO.

18      AND GOGGLE AND AMAZON GET AWAY WITH THEIR 30 PERCENT, AND

19  THEY DON'T HAVE TO SUFFER ANY CONSEQUENCES.  ALL THEY HAVE TO DO

20  IS HIDE BEHIND THESE STATUTES.  WHICH WE FEEL, BY THE WAY, LIKE

21  THE DECENCY ACT WAS NOT MEANT TO BE A STATUTE THAT ALLOWS PEOPLE

22  WHO MAKE MONEY ON THIS STUFF TO HIDE BEHIND IT TO PROTECT THEIR

23  INCOME STREAM.

24      THAT WAS SUPPOSED TO -- THAT WAS ORIGINALLY CREATED -- I'M

25  SURE YOUR HONOR KNOWS A LOT MORE ABOUT THIS THAN I DO.

1          **THE COURT:**  THERE'S NO PROVISION IN THE ACT THAT

2   EXEMPTS THE INTERACTIVE COMPUTER SERVICES WHO ARE MAKING MONEY.

3          **MR. SCHUROWLIEW:**  NO, BUT THEY HAVE THE EXEMPTION FOR

4   INTELLECTUAL PROPERTY RIGHTS.  THAT'S IN 230E2.  THERE IS AN

5   EXEMPTION:  ANYTHING HAVING TO DO WITH INTELLECTUAL PROPERTY

6   RIGHTS IS EXEMPT FROM THE PURVIEW OF THE STATUTE.

7          **THE COURT:**  OKAY.

8          **MR. SCHUROWLIEW:**  OKAY?  AND THEN, WHAT WE'RE SAYING IS

9   THAT -- NOW, THEY HAVE ALSO SAID THAT OUR ARGUMENT ABOUT

10  PREEMPTION IS NOT CORRECT.  THAT THIS HAS NOTHING TO DO WITH

11  PREEMPTION.

12         BUT IN THEIR OWN -- IN THEIR OWN BRIEF, THEY CITE A CASE.

13  AND I'D LIKE TO READ IT TO YOU, IF YOU DON'T MIND.  IN THEIR OWN

14  MOTION -- I'M SORRY -- IN THEIR OWN MOTION.  THIS IS ON PAGE TEN

15  OF 13 OF GOGGLE'S AND AMAZON'S JOINT MOTION.  AND THEY TALK ABOUT

16  PERFECT TEN, INC. V. CC BILL LLC.

17             "THE COMMUNICATIONS DECENCY ACT STATES THAT NO

18             PROVIDER, USER OF AN INTERACTIVE SERVICE SHALL BE TREATED

19             AS THE PUBLISHER OR SPEAKER OF ANY INFORMATION PROVIDED BY

20             ANOTHER INFORMATION CONTENT PROVIDER AND EXPRESSLY" --

21         **THE COURT:**  EXCUSE ME.  EXCUSE ME.  WHEN YOU'RE READING

22  YOU'RE READING A MILE A MINUTE.

23         **MR. SCHUROWLIEW:**  OKAY.

24         **THE COURT:**  OUR COURT REPORTER IS FABULOUS, BUT SHE

25  CAN'T TYPE A MILE A MINUTE.  PLEASE BE MINDFUL OF THAT AND SLOW

1  DOWN IF YOU ARE GOING TO READ.

2          **MR. SCHUROWLIEW:**  OKAY, THANK YOU.

3      "AND EXPRESSLY PREEMPTS ANY STATE LAW TO THE CONTRARY."

4      OKAY.  SO THIS IS -- THEY SAY IT'S NOT A PREEMPTION

5  ARGUMENT, BUT IT IS A PREEMPTION ARGUMENT.  THEY USE THE WORD

6  "PREEMPT."

7      SO WHAT I'M BASICALLY SAYING IS IF THE STATE LAW IS THE SAME

8  AS THE FEDERAL LAW OR HAS PROVISIONS THAT ARE CONGRUENT TO THE

9  FEDERAL LAW, THEN THE STATE CLAIMS SHOULD NOT BE THROWN OUT.

10         **THE COURT:**  OKAY.

11         **MR. SCHUROWLIEW:**  THERE'S ANOTHER CASE THAT TALKS ABOUT

12  CONGRUENCY AND TWO TRIANGLES FROM MATHEMATICS ARE CONGRUENT IF

13  THEY HAVE THE SAME SIDES, OR THE SAME SIDES AND ANGLES, WHICH IS

14  THE SAME THING.

15     SO, IF TWO THINGS ARE CONGRUENT, THEN THEY SHOULD STATE TO

16  THAT EXTENT.

17         **THE COURT:**  OKAY.

18         **MR. SCHUROWLIEW:**  AND I CITED A COUPLE OF CASES OR OUR

19  SIDE CITED A COUPLE OF CASES TALKING ABOUT PREEMPTION, WHICH IS

20  WHAT THEY HAD IN THEIR BRIEF, WHICH I JUST READ.  AND WE TALKED

21  ABOUT THE STATE CAUSES OF ACTION CAN STAY AS LONG AS THEY ARE

22  CONGRUENT TO THE FEDERAL CAUSE OF ACTION, WHICH IS THE LANHAM

23  ACT.

24         **THE COURT:**  ALL RIGHT.

25         **MR. SCHUROWLIEW:**  OKAY.

1          **THE COURT:**  IS THAT IT?

2          **MR. SCHUROWLIEW:**  THANK YOU VERY MUCH, YOUR HONOR.

3          **THE COURT:**  ALL RIGHT.

4          **MR. SCHUROWLIEW:**  APPRECIATE IT.

5          **THE COURT:**  DO YOU WISH TO RESPOND?

6          **MR. PAGE:**  VERY BRIEFLY, YOUR HONOR.  I THINK THE COURT

7    CAN LOOK AT THE FOUR PARAGRAPHS HE CITED AND NONE OF THEM SAY

8    ANY -- STATE ANY FACTS THAT WOULD INDICATE KNOWLEDGE.

9          VERY BRIEFLY, THE IDEA THAT IF ANY OF THESE ISPS -- APPLE

10   HAS A MILLION AND A HALF APPS ON THEIR WEBSITE.  GOGGLE HAS

11   HUNDREDS OF THOUSANDS OF APPS.  AMAZON HAS HUNDREDS OF THOUSANDS.

12         EVEN IF IN THE THEORETICAL WORLD MY OPPONENT PROPOSES, WE

13   HAD AN OBLIGATION TO GO FIGURE OUT WHETHER ANY HAVE THEM INFRINGE

14   TRADEMARK RIGHTS OR WERE LICENSED OR WERE IN ANY WAY INFRINGING,

15   AND EVEN IF WE WENT TO THE TRADEMARK OFFICE WEBSITE AND LOOKED UP

16   THEIR MARK, WHAT WE WOULD FIND IS THAT THEY HAVE A MARK THAT IS

17   REGISTERED IN THE FIELD OF USE FOR PUTTING ON SPORTING EVENTS IN

18   STADIUMS, PERIOD.

19         THEY DON'T HAVE A TRADEMARK THAT COVERS THIS USE.  THEY HAVE

20   A SISTER COMPANY THAT'S APPLIED FOR ONE, ALTHOUGH THEY HAVE NEVER

21   MADE AN APP.  AND THEY ARE NOT A PLAINTIFF IN THIS CASE.

22         SO EVEN IF WE HAD THE OBLIGATION, WHICH WE DON'T, TO GO

23   LOOK, THE ANSWER WOULD HAVE BEEN THEY DON'T HAVE A TRADEMARK IN

24   THIS FIELD OF USE.

25         SO, IT JUST SIMPLY WOULDN'T WORK.

1        ON THE CDA ISSUE, THERE ARE TWO DIFFERENT PIECES OF THE CDA.

2        THEY ARE TALKING ABOUT GOOD SAMARITAN PROVISIONS WHICH SAY

3   THAT IF WE POLICE OUR OWN WEBSITE AND TAKE DOWN THINGS WE FIND

4   OFFENSIVE WE CAN'T BE HELD LIABLE FOR HAVING DONE SO.  THE OTHER

5   HALF OF THE CDA SAYS THAT WE'RE NOT LIABLE FOR MATERIAL AUTHORED

6   BY THIRD PARTIES.

7        CC BILL IS A COMMUNICATIONS DECENCY ACT PREEMPTION CASE.

8   THERE'S LOTS OF KINDS OF PREEMPTION.  THERE'S ALSO LANHAM ACT

9   PREEMPTION.  WE HAVEN'T ARGUED LANHAM ACT PRESUMPTION.  SO THE

10  FACT THAT THERE ARE EXCEPTIONS TO LANHAM ACT PREEMPTION IS

11  TOTALLY IRRELEVANT HERE.

12       WITH THAT, UNLESS THE COURT HAS ANY QUESTIONS, WE'D BE HAPPY

13  TO SUBMIT.

14          **THE COURT:**  WELL, IT SEEMS TO ME THAT THE REAL PROBLEM

15  HERE IS THE KNOWLEDGE COMPONENT, WHICH IS NOT IN MY VIEW

16  ADEQUATELY PLED.  AND AS I INDICATED I'M NOT EVEN LOOKING AT THE

17  DOCUMENTS THAT WERE STAPLED TO THE OPPOSITION BRIEF.

18       WHAT'S YOUR POSITION ON WHETHER OR NOT, ASSUMING I DISMISS

19  ON THE GROUNDS THAT THERE ARE INSUFFICIENT ALLEGATIONS AS TO

20  KNOWLEDGE ON THE PART OF THE DEFENDANTS, WHAT'S YOUR POSITION ON

21  LEAVE TO AMEND?

22          **MR. PAGE:**  WE'RE AGAINST IT, SURPRISINGLY ENOUGH.  THIS

23  IS THE THIRD AMENDED COMPLAINT.  IT'S THE FIRST ONE IN THIS

24  COURT, BUT WE'VE AROUND TWICE IN CLEVELAND BEFORE THIS.  THEY

25  HAVE HAD THREE SHOTS AT PLEADING THIS.

1          **THE COURT:**  WERE THERE ACTUAL MOTIONS FILED?

2          **MR. PAGE:**  YES.

3          **THE COURT:**  THEY WEREN'T STIPULATED AMENDMENTS

4    PREVIOUSLY?

5          **MR. PAGE:**  I'M NOT SURE ABOUT THE FIRST ONE.  THE

6    SECOND ONE THERE WAS A MOTION TO TRANSFER OR DISMISS.  ALL OF

7    THESE ARGUMENTS WERE MADE.  THEY THEN FILE -- THE COURT

8    TRANSFERRED RATHER THAN REACH THE RULE 12 ISSUES.

9          **THE COURT:**  SO IT'S ONLY BEING BROUGHT BEFORE THE COURT

10   FOR THE FIRST TIME HERE.

11         **MR. PAGE:**  RIGHT.  BUT ALL OF THE -- BUT THE COMPLAINT

12   HAS BEEN AMENDED AGAIN IN LIGHT OF ALL OF THESE ARGUMENTS WHICH

13   WERE BRIEFED IN OHIO.  THESE ARE NOT NEW ISSUES TO THEM.  IF THEY

14   HAD ANSWERS TO THEM THEY COULD HAVE AMENDED LAST TIME.

15         THE IDEA THAT IF THEY COULD JUST TAKE DISCOVERY THEY COULD

16   FIGURE OUT WHETHER THEY SENT US A NOTICE IS FRANKLY ABSURD.  YOU

17   KNOW, ALL THE DISCOVERY IN THE WORLD ISN'T GOING TO TELL THEM

18   WHAT THEY DID.  THEY HAVE KNOWN IT'S AN ISSUE.  THEY HAVE HAD NOW

19   THREE COMPLAINTS.

20         WE WOULD URGE THE COURT TO DISMISS WITH PREJUDICE.

21         **THE COURT:**  OKAY.  ALL RIGHT, COUNSEL.  I WOULD LIKE

22   YOU TO SPEAK TO THAT.  WHAT IF I WERE TO GIVE YOU LEAVE TO AMEND

23   ON THE KNOWLEDGE ISSUE, WHAT WOULD YOU ADD?  SINCE YOU'RE NOT

24   GOING TO BE ABLE TO GET ANY DISCOVERY UNTIL AFTER YOU PASS THIS

25   STAGE.

1          **MR. SCHUROWLIEW:**  WELL, WE WOULD HAVE TO -- WE WOULD

2     HAVE TO SPEAK TO EVERYBODY ASSOCIATED WITH THE PLAINTIFF IN ORDER

3     TO OBTAIN SPECIFIC FACTS DEALING WITH PHONE CALLS, TEXT MESSAGES,

4     ANYTHING THAT THEY -- ANY KIND OF COMMUNICATIONS THAT THEY HAD

5     WITH GOOGLE AND AMAZON.

6          **THE COURT:**  AND YOU DIDN'T DO THAT BEFORE YOU FILED THE

7     SECOND-AMENDED COMPLAINT?

8          **MR. SCHUROWLIEW:**  WE FRANKLY -- WE WERE NOT -- WE DID

9     NOT THINK THAT ACTUAL KNOWLEDGE WAS REQUIRED.  WE THOUGHT THAT

10    CONSTRUCTIVE KNOWLEDGE WAS SUFFICIENT.  AND WE FELT THAT WE HAD

11    ENOUGH AS FAR AS CONSTRUCTIVE KNOWLEDGE GOES BECAUSE WE WERE ABLE

12    TO SEE THAT THESE PEOPLE HAD NOTICE FROM THE TRADEMARK OFFICE AND

13    WE WERE ABLE TO SEE THAT THEY HAD ALL OF THESE VETTING PROCEDURES

14    FOR CHECKING THE APPS.

15         SO IF THEY ARE GOING TO BE CHECKING ALL OF THESE THINGS WE

16    FELT THAT THEY HAD, IN TERMS OF CHECKING FOR, LIKE I DISCUSSED,

17    PORNOGRAPHY, DRUG USE, ANIMAL RIGHTS, VIOLENCE, YOU KNOW, THIS,

18    THAT AND THE OTHER THING.  AND IT EVEN STATES IN SOME OF THEIR

19    PROGRAM DEVELOPMENT PORTALS THAT THEY DO CHECK ON --

20         **THE COURT:**  YOU'RE REHASHING.  THE ANSWER IS NO.

21         **MR. SCHUROWLIEW:**  RIGHT.

22         **THE COURT:**  YOU DIDN'T DO ANY CHECKING OF THE --

23    WHETHER OR NOT THERE ARE TEXT MESSAGES, NOTICE, ET CETERA.

24         **MR. SCHUROWLIEW:**  NO.  WE FELT THAT CONSTRUCTIVE

25    KNOWLEDGE WAS SUFFICIENT; THAT THEY HAD TO ESTABLISH --

1                    **THE COURT:**  ALL RIGHT.  THANK YOU.

2                    **MR. SCHUROWLIEW:**  THANK YOU.

3                    **THE COURT:**  SAMSUNG'S COUNSEL?

4                    **MR. ULIN:**  THANK YOU, YOUR HONOR.  AND I'LL TRY AS

5     BEST I CAN NOT TO REPLOW SOME OF THE GROUND THAT HAS BEEN

6     COVERED.

7                THERE ARE TWO QUESTIONS ESSENTIALLY PRESENTED BY SAMSUNG'S

8     MOTION.  NUMBER ONE:  SHOULD THE SECOND AMENDED COMPLAINT AGAINST

9     SAMSUNG BE DISMISSED?  AND THEN, NUMBER TWO, IF IT IS DISMISSED

10    SHOULD THE PLAINTIFF BE GIVEN LEAVE TO AMEND TO MAKE A FOURTH

11    ATTEMPT AT COMPLETING AN ACTIONABLE COMPLAINT AGAINST SAMSUNG?

12               FIRST WITH RESPECT TO DISMISSAL OF THE SECOND-AMENDED

13    COMPLAINT, ALL THREE OF THE PRIOR COMPLAINTS HAVE SOUNDED IN

14    DIRECT LIABILITY.  YOUR HONOR NOTED THAT THE WORD "CONTRIBUTORY

15    LIABILITY" OR "CONTRIBUTORY INFRINGEMENT" APPEAR NOWHERE IN THE

16    SECOND-AMENDED COMPLAINT.  AND THEY ARE NOT IN ANY OF THE PRIOR

17    COMPLAINTS, EITHER.

18               THERE ARE FIVE CLAIMS IN THOSE COMPLAINTS, OR PARTICULARLY

19    IN THE SECOND-AMENDED COMPLAINT.  TRADEMARK INFRINGEMENT UNDER

20    THE LANHAM ACT.  FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM

21    ACT.  STATE LAW TRADEMARK INFRINGEMENT.  AND THEN, CLAIMS FOR

22    VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION

23    17200 AND 17500.

24               WITH RESPECT TO THE SECOND-AMENDED COMPLAINT AND ITS DIRECT

25    LIABILITY CLAIMS AGAINST SAMSUNG, ALL OF THOSE CLAIMS REQUIRE

1    SOME ALLEGATION THAT SAMSUNG ACTUALLY USED PLAINTIFF'S

2    TRADEMARKS, WHICH IS COMPLETELY ABSENT FROM THE SECOND-AMENDED

3    COMPLAINT.

4         THAT WOULD BE EITHER USE IN COMMERCE TO SUPPORT THE

5    TRADEMARK AND FALSE DESIGNATION CLAIMS, AS WELL AS UCL CLAIM OR

6    USE IN ADVERTISING TO SUPPORT THE FALSE ADVERTISING LAW COMPLAINT

7    OR CLAIM.

8         UNLIKE THE OTHER DEFENDANTS IN THIS CASE, THE ALLEGATIONS

9    AGAINST SAMSUNG DO NOT CLAIM THAT WE RAN AN APP STORE THROUGH

10   WHICH FOLKS COULD DOWNLOAD INFRINGING APPS. THE ALLEGATIONS

11   AGAINST SAMSUNG AT PARAGRAPHS 21 AND 22 OF THE SECOND-AMENDED

12   COMPLAINT ALLEGE ONLY THAT SAMSUNG SELLS MOBILE DEVICES THAT SOME

13   PURCHASERS MAY USE TO DOWNLOAD INFRINGING APPS FROM THIRD-PARTY

14   WEBSITES.

15        AND THEN THE COMPLAINT ATTACHES AN EXAMPLE OF A

16   THIRD-PARTY -- OR WHAT PURPORTS TO BE A PRINTOUT FROM A

17   THIRD-PARTY WEBSITE THAT IT IS USED TO ILLUSTRATE WHAT PLAINTIFF

18   BELIEVES GIVES RISE TO LIABILITY FOR SAMSUNG.

19        EFFECTIVELY, BECAUSE THE PLAINTIFF FAILS TO ALLEGE THAT

20   SAMSUNG ACTUALLY USED ITS TRADEMARKS, ALL OF THE CLAIMS AGAINST

21   SAMSUNG AS THEY ARE PLED IN THE SECOND-AMENDED COMPLAINT FAIL.

22   AND THE PLAINTIFF HAS BASICALLY CONCEDED THE KEY POINTS THAT

23   MAKE OUT THAT ARGUMENT THIS MORNING.

24        PLAINTIFF HAS CONCEDED THAT SAMSUNG DIDN'T CREATE THOSE APPS

25   AND THAT THE WEBSITES THAT IT HAS -- THAT IT BELIEVES, YOU KNOW,

1    SELL THOSE APPS ARE THIRD-PARTY SITES NOT RUN BY SAMSUNG.

2         WE'RE NOT USING THE TRADEMARK BY EITHER OF THE METHODS THAT

3    PLAINTIFF COMPLAINS ABOUT ITS USE IN THIS CASE, AND THEREFORE ALL

4    FIVE OF THOSE CLAIMS FAIL.

5         I LEFT OUT, OF COURSE, INJUNCTIVE RELIEF WHICH PLAINTIFF

6    CONCEDES IS NOT A CLAIM BUT ONLY A REMEDY.  OF COURSE, IT'S

7    LONG-STANDING LAW DATING ALL THE WAY BACK TO THE SONY BETA MAX

8    CASE THAT SIMPLY SELLING DEVICES THAT OTHER PEOPLE MAY USE TO

9    INFRINGE OR DOWNLOAD INFRINGING MATERIAL IS NOT SUFFICIENT TO

10   ESTABLISH CONTRIBUTORY LIABILITY.  AND THAT'S IN THE COPYRIGHT

11   SPHERE.

12        IN THE TRADEMARK SPHERE WHERE CONTRIBUTORY LIABILITY IS EVEN

13   MORE CONSTRAINED IT'S CERTAINLY NOT SUFFICIENT.  IN RESPONSE TO

14   ALL OF THIS, PLAINTIFF SORT OF PRESAGED WHAT THEY WOULD DO TODAY

15   BY ESSENTIALLY ACKNOWLEDGING THAT THEY CAN'T PLEAD DIRECT

16   INFRINGEMENT AGAINST SAMSUNG AND ABANDONING THE CLAIMS IN THEIR

17   SECOND-AMENDED COMPLAINTS, ALL OF WHICH SUGGEST THAT THE PROPER

18   ANSWER TO THE FIRST QUESTION IS THAT COMPLAINT NEEDS TO BE

19   DISMISSED.

20        AND THEN THE QUESTION IS:  DO THEY GET TO TRY AGAIN FOR A

21   FOURTH TIME?

22        BY THE WAY, IT IS ALSO CONSISTENT -- THE NOTION THAT THEY

23   CAN'T PLEAD DIRECT INFRINGEMENT IS CONSISTENT WITH THAT EXHIBIT

24   EIGHT TO THEIR COMPLAINT WHICH IS -- PURPORTS TO BE A PRINTOUT

25   FROM A THIRD-PARTY WEBSITE.  THAT'S ALL THE EVIDENCE THAT

1    SUPPORTS THE CLAIM.

2         THAT'S THE SAME EVIDENCE IN RESPONSE TO YOUR HONOR'S

3    EARLIER QUESTION ABOUT WHETHER THERE HAD BEEN PRIOR MOTIONS TO

4    DISMISS.  THAT'S THE SAME EVIDENCE THAT THEY SHOWED TO JUDGE

5    NEUGENT IN OHIO TO SUGGEST THAT THEY OUGHT TO BE ALLOWED TO AMEND

6    THEIR COMPLAINT TO COMPLY WITH EVIDENCE THAT WOULD SUPPORT A

7    CLAIM AGAINST SAMSUNG.

8         THERE WAS EXHIBIT TWO TO THEIR OPPOSITION TO THE MOTION TO

9    DISMISS THE FIRST-AMENDED COMPLAINT.  THEY NOW CLAIM WITH RESPECT

10   TO SAMSUNG FOR THE FIRST TIME THAT THIS IS A CASE ABOUT

11   CONTRIBUTORY INFRINGEMENT.  AGAIN, NOT MENTIONED IN THE

12   SECOND-AMENDED COMPLAINT.

13        SO THIS WOULD BE PRESUMABLY A BASIS FOR REQUEST FOR LEAVE TO

14   AMEND AND TO FILE A THIRD-AMENDED COMPLAINT.  BUT THE ALLEGATIONS

15   OF THE SECOND-AMENDED COMPLAINT CERTAINLY DON'T SUPPORT THAT

16   ARGUMENT.  THE ALLEGATIONS IN THAT DOCUMENT LACK ESSENTIAL --

17   LACK THE ESSENTIAL ELEMENTS OF,  NUMBER ONE, THAT SAMSUNG HAD

18   KNOWLEDGE OF SPECIFIC INSTANCES OF INFRINGEMENT BY IDENTIFIED

19   INDIVIDUAL INFRINGERS.

20        AND NUMBER TWO, THAT SAMSUNG IN THIS INSTANCE BECAUSE THAT

21   INFRINGEMENT OCCURRED OVER INTERNET WEBSITES HAD DIRECT

22   MONITORING OR DIRECTLY MONITORED AND HAD DIRECT CONTROL OVER

23   THOSE THIRD-PARTY WEBSITES SUCH THAT IT COULD DO SOMETHING ABOUT

24   THE INFRINGEMENT.

25        THOSE ELEMENTS ARE ESTABLISHED IN THE NINTH CIRCUIT'S

1  PERFECT TEN VERSUS VISA CASE, AS WELL AS THE SECOND CIRCUIT'S

2  TIFFANY VERSUS EBAY CASE, BOTH OF WHICH ARE CITED IN OUR PAPERS.

3      ABSENT THOSE ELEMENTS THE SECOND-AMENDED COMPLAINT WON'T

4  SUPPORT CONTRIBUTORY LIABILITY AGAINST SAMSUNG AND, THEREFORE,

5  THE NOTION THAT THIS -- THAT PLAINTIFF CLAIMS THIS IS A

6  CONTRIBUTORY LIABILITY CASE IS NOT SUFFICIENT TO SAVE THE

7  SECOND-AMENDED COMPLAINT.

8      SIMILARLY WITH RESPECT TO THE SECOND-AMENDED COMPLAINT AND

9  THE LAST POINT I'LL MAKE WITH RESPECT TO DISMISSAL OF THAT

10 DOCUMENT IS AS TO THE FALSE ADVERTISING LAW AND THE UNFAIR

11 COMPETITION LAW, THE PRECEDENCE FROM DISTRICT COURTS WITHIN THE

12 NINTH CIRCUIT IS THAT THOSE CLAIMS BECAUSE THEY SOUND IN

13 MISREPRESENTATION MUST MEET THE HEIGHTENED PLEADING STANDARD OF

14 RULE 9 (B).

15     SO THERE HAS TO BE ALLEGATIONS OF THE WHO, WHAT, WHEN, WHERE

16 AND HOW, SPECIFIC ALLEGATIONS OF THE TIME, PLACE AND CONTENT OF

17 THE REPRESENTATIONS THAT GIVE RISE TO LIABILITY, NONE OF WHICH IS

18 IN THE SECOND-AMENDED COMPLAINT.

19     AND I DO WANT TO -- IF I MAY, YOUR HONOR, I WANT TO CITE TWO

20 CASES BECAUSE I DIDN'T ARGUE THAT PRINCIPLE IN OUR BRIEF.  THE

21 TWO CASES WOULD BE WITH RESPECT TO THE FALSE ADVERTISING LAW

22 EPICOR, E-P-I-C-O-R, SOFTWARE CORPORATION VERSUS ALTERNATE TECH

23 SOLUTIONS 2013 WESTLAW, 2382262 AT STAR FOUR.

24     AND THEN, WITH RESPECT TO THE UNFAIR COMPETITION LAWS,

25 HERRON, H-E-R-R-O-N, VERSUS BEST BUY COMPANY, 924 F.SUPP2D 1161

1   AT 1170.

2        THAT THEN BRINGS US TO THE QUESTION OF DISMISSAL WITH

3   PREJUDICE, THE QUESTION YOU ASKED COUNSEL:

4             "SO IF I DISMISS THE SECOND-AMENDED COMPLAINT SHOULD

5             THEY BE GIVEN AN OPPORTUNITY TO PLEAD A THIRD-AMENDED

6             COMPLAINT AGAINST SAMSUNG?"

7        AND THE ANSWER TO THAT QUESTION IS PRETTY CLEARLY NO.  AND

8   SOME OF THE ANSWERS THAT PLAINTIFF HAS GIVEN YOU THIS MORNING I

9   THINK SUBSTANTIATE THAT, THAT CONCLUSION.

10        THE PLAINTIFF SEEKS TO AMEND BASED ON SOME EXHIBITS THAT

11   YOUR HONOR HAS INDICATED THAT YOU'RE NOT GOING TO TAKE INTO

12   ACCOUNT, THAT ARE ATTACHED TO THE MOTION TO DISMISS.  I WOULD

13   NOTE THAT THOSE DOCUMENTS ONLY UNDERSCORE THE FUTILITY OF AN

14   AMENDMENT TO ADD A SECONDARY LIABILITY CLAIM OR CONTRIBUTORY

15   LIABILITY CLAIM AGAINST SAMSUNG.

16        WHAT DO THEY SHOW?  THERE ARE SIX EXHIBITS. THE FIRST THREE

17   PURPORT TO BE MORE PRINTOUTS FROM THIRD-PARTY WEBSITES.  WEBSITE

18   CALLED "PLAY.MOB.ORG."

19        ANOTHER ONE CALLED "MOBILESM" -- I'M SORRY.  "MOBILESMSPK."

20   AND A THIRD ONE CALLED "MOBILES24.CO," WHICH PLAINTIFF CONCEDES

21   ARE THIRD-PARTY WEBSITES.  AND THERE'S NO INDICATION OR NO

22   ALLEGATION OR INDICATION THAT ANY OF THOSE WEBSITES ARE RUN OR IN

23   ANY WAY CONTROLLED BY SAMSUNG.

24        PLAINTIFF ALLEGES IN THE SECOND-AMENDED COMPLAINT AND MAKES

25   NO INDICATION IN ITS OPPOSITION TO THE MOTION TO DISMISS THAT IT

1    HAS ANY ABILITY TO ALLEGE IN A THIRD-AMENDED COMPLAINT THAT

2    SAMSUNG HAD ACTUAL KNOWLEDGE OF SPECIFIC INFRINGEMENT ON THOSE

3    SITES, OF THE SPECIFIC APPS THAT IT HAS IDENTIFIED ON THOSE SITES

4    AS INFRINGING OR THAT SAMSUNG HAD ANY ABILITY TO CONTROL THOSE

5    SITES EVEN IF THERE WERE KNOWLEDGE.

6         WITHOUT THE ABILITY TO MAKE THOSE ALLEGATIONS, THE PLAINTIFF

7    CAN'T ALLEGE A SECONDARY OR A CONTRIBUTORY LIABILITY CLAIM

8    AGAINST SAMSUNG, AND THEREFORE, THE AMENDMENT WOULD BE FUTILE.

9         WE WOULD SIMPLY BE BACK HERE AGAIN ON ANOTHER MOTION TO

10   DISMISS.

11        WITH RESPECT TO EXHIBITS FOUR THROUGH SIX IN THAT COMPLAINT,

12   ALL OF THOSE ARE TERMS AND CONDITIONS FOR THE USE OF VARIOUS

13   SAMSUNG-RELATED WEBSITES, NONE OF WHICH ARE AT ALL RELATED TO THE

14   THIRD-PARTY WEBSITES THAT THE PLAINTIFF HAS PUT FORWARD AS

15   EVIDENCE OF WHAT THEY ARE COMPLAINING ABOUT.  SO THERE'S NO

16   INDICATION THAT ANY OF THOSE WEBSITES OR THAT THERE'S ANY

17   INFRINGEMENT RELATED TO THE SAMSUNG DEVELOPER'S WEBSITE WHICH IS

18   EXHIBIT -- WHICH IS THE TERMS FOR WHICH ARE EXHIBIT FOUR.  OR

19   THAT THERE'S ANY RELATIONSHIP BETWEEN THESE THIRD-PARTY WEBSITES

20   THAT PLAINTIFF HAS IDENTIFIED AND THE GALAXY APPS SITE WHICH IS

21   REVIEW AND CONDITIONS FOR WHICH ARE IN EXHIBIT FIVE, OR THE

22   SELLER.SAMSUNGAPPS.COM SITE, TERMS OF WHICH ARE IN EXHIBIT SIX.

23        SO EVEN IF THOSE TERMS AND CONDITIONS WERE TO ESTABLISH SOME

24   SORT OF PROCESS THAT MIGHT LEAD ONE TO CONCLUDE THAT IF YOU WENT

25   THROUGH THAT PROCESS SAMSUNG MIGHT KNOW OR HAVE REASON TO KNOW

 1   THAT THERE WAS INFRINGEMENT ON A SITE, THERE'S NO INDICATION AND

 2   NO ALLEGATION THAT ANY OF THE THIRD-PARTY WEBSITES AT ISSUE HERE

 3   IS AT ALL RELATED TO THOSE SITES.

 4        MOREOVER, IF YOU LOOK AT THE TERMS AND CONDITIONS WHAT THEY

 5   ESSENTIALLY SAY IS THAT SAMSUNG HAS RESERVED ITS RIGHT TO REVIEW

 6   SUBMISSIONS BY CERTAIN THIRD PARTIES.  IT DOESN'T SAY

 7   SPECIFICALLY THAT THAT REVIEW WILL ALWAYS TAKE PLACE.  IT DOESN'T

 8   SAY SPECIFICALLY WHAT THAT REVIEW WILL ALWAYS ENTAIL, NOR DOES IT

 9   ESTABLISH THE KEY ELEMENT OF CONTRIBUTORY TRADEMARK LIABILITY,

10   WHICH IS THE ACTUAL KNOWLEDGE OF SPECIFIC INSTANCES OF

11   INFRINGEMENT BY AN IDENTIFIED THIRD PARTY.

12        FINALLY, I WANT TO THE TOUCH BRIEFLY ON ONE POINT SINCE IT'S

13   BEEN RAISED A NUMBER OF TIMES, WHICH IS THIS 2011 LETTER OR

14   PURPORTED LETTER.  AGAIN, AS YOUR HONOR NOTED, NOT AUTHENTICATED

15   BUT ATTACHED TO THE SECOND-AMENDED COMPLAINT TO SAMSUNG.  FIRST

16   OF ALL, TO SAMSUNG IN KOREA, NOT TO THE DEFENDANT IN THIS CASE,

17   SAMSUNG ELECTRONICS AMERICA.

18        BUT LEAVING THAT POINT ASIDE, THAT LETTER DOES NOT REFERENCE

19   PLAINTIFF'S TRADEMARK.  IT REFERENCES TWO GAMES CALLED FREE KICK

20   LEGENDS AND FREE KICK CARNIVAL.  NEITHER OF THOSE GAMES IS AT

21   ISSUE IN THIS CASE.

22        NEITHER OF THOSE GAMES USES THE FREE KICK MASTER TRADEMARK.

23   IT'S THOSE THREE WORDS THAT MAKE UP THE TRADEMARK.  NOR IS IT

24   REALLY CONCEIVABLE THAT EITHER OF THOSE GAMES WOULD INFRINGE THE

25   MARK, GIVEN THE UBIQUITOUS AND GENERIC USE OF THE TERM "FREE

1    KICK."  VIRTUALLY IMPOSSIBLE TO BELIEVE THAT THAT COULD EVEN BE A

2    TRADEMARK.

3        AND THERE'S NO CLAIM THAT AND NO ALLEGATION AT ALL ONE WAY

4    OR ANOTHER WITH RESPECT TO WHETHER THOSE GAMES ARE STILL

5    AVAILABLE, WHAT HAPPENED IN RESPONSE TO THE LETTER, WHETHER THE

6    GAMES WERE TAKEN DOWN, WHETHER SAMSUNG EVEN HAD THE ABILITY TO

7    TAKE THE GAMES DOWN.

8        BUT LEAVING ALL THAT ASIDE, THEY SIMPLY DON'T USE

9    PLAINTIFF'S TRADEMARK AND, THEREFORE, THE LETTER IS ESSENTIALLY

10   IRRELEVANT TO THE ISSUES BEFORE THIS COURT.

11           **THE COURT:**  ALL RIGHT.  THANK YOU.

12           **MR. PAGE:**  THANK YOU, YOUR HONOR.

13           **THE COURT:**  ALL RIGHT.  RESPONSE.

14           **MR. ALKANA:**  GOOD MORNING, YOUR HONOR.

15           **THE COURT:**  GOOD MORNING.

16           **MR. ALKANA:**  EUGENE ALKANA.

17       IN CONNECTION WITH THE MOTION TO DISMISS BY SAMSUNG, I THINK

18   IT'S PRETTY CLEAR FROM THE DISCUSSIONS THAT SAMSUNG OCCUPIES A

19   DIFFERENT POSITION THAN BOTH GOGGLE AND AMAZON IN THE SENSE THAT

20   FREE KICK MASTERS DID PROVIDE A NOTICE CONCERNING A POTENTIAL

21   INFRINGEMENT IN 2011.  THAT WAS JUST AN EXAMPLE OF THE

22   COMMUNICATIONS BETWEEN FREE KICK MASTERS AND SAMSUNG.  THERE WERE

23   OTHER COMMUNICATIONS WHICH WERE NOT ATTACHED TO THE COMPLAINT BUT

24   FOR PURPOSES OF THE COMPLAINT --

25           **THE COURT:**  SO WHY DID YOU SELECT THAT EXAMPLE THAT'S

1    IRRELEVANT TO THE TRADEMARK AT ISSUE HERE?

2              **MR. ALKANA:**  BECAUSE THAT AT THE TIME WAS THE MOST

3    EASIEST AND MOST AVAILABLE DOCUMENT TO SHOW THAT THERE WAS A

4    DEMAND UPON THE DEFENDANT SAMSUNG TO CEASE THE USE OF THE FREE

5    KICK MASTERS.

6              **THE COURT:**  WERE THERE OTHER SIMILAR DEMANDS?

7              **MR. ALKANA:**  THERE ARE OTHER TEXT MESSAGES.  I DON'T

8    KNOW THAT THERE'S ANOTHER LETTER OF THE SAME VEIN, BUT I KNOW

9    THERE'S OTHER COMMUNICATIONS.

10             **THE COURT:**  AND ARE THERE COMMUNICATIONS THAT DEAL

11   SPECIFICALLY WITH THE TRADEMARK AT ISSUE HERE?

12             **MR. ALKANA:**  YES, THERE ARE.  SO I THINK IN TERMS OF

13   THE KNOWLEDGE ISSUE I THINK THAT THE PLAINTIFF SHOULD BE GRANTED

14   LEAVE TO AMEND.  IT SEEMS THAT THE KNOWLEDGE IS THE PRIMARY ISSUE

15   IN THIS CASE, IN TERMS OF A CLAIM FOR CONTRIBUTORY LIABILITY.

16             **THE COURT:**  AND THE CLAIM IS FOR CONTRIBUTORY

17   LIABILITY?

18             **MR. ALKANA:**  NO.  NO.  I THINK THAT THE PLAINTIFF COULD

19   STATE A CLAIM FOR CONTRIBUTORY LIABILITY.

20             **THE COURT:**  IS THE CLAIM AS STATED ONE FOR DIRECT

21   LIABILITY?

22             **MR. ALKANA:**  IT IS.

23             **THE COURT:**  AGAINST ALL THE DEFENDANTS.

24             **MR. ALKANA:**  THE WAY IT'S PLED?  YES.

25             **THE COURT:**  AGAINST ALL THE DEFENDANTS.

1              **MR. ALKANA:**  YES.

2              **THE COURT:**  OKAY.  SO THERE IS NO ALLEGATION OF

3     CONTRIBUTORY INFRINGEMENT.

4              **MR. ALKANA:**  NOT IN THE COMPLAINT.

5              **THE COURT:**  WHICH COUNSEL FOR GOGGLE AND AMAZON HAS

6     SAID HE INFERRED FROM THE LANGUAGE BECAUSE THERE COULD BE NO

7     DIRECT INFRINGEMENT.

8              **MR. ALKANA:**  I DON'T AGREE WITH THE FACT THAT

9     COUNSEL -- WITH COUNSEL'S ASSESSMENT THAT THERE COULD BE NO

10    DIRECT INFRINGEMENT.  I THINK IN THIS PARTICULAR CASE AS TO

11    SAMSUNG, SAMSUNG WAS ADVERTISING A FREE PHONE -- A PHONE --

12    SAMSUNG WAS ADVERTISING A PHONE THAT COULD PLAY THE FREE KICK

13    MASTERS APP.  SO I THINK THAT THERE IS A CLAIM FOR DIRECT

14    INFRINGEMENT. SO I DON'T AGREE WITH COUNSEL THAT THERE CANNOT BE

15    A DIRECT INFRINGEMENT CLAIM.

16        I THINK IN ADDITION THERETO I THINK PLAINTIFF SHOULD BE

17    GRANTED LEAVE TO AMEND TO STATE A CONTRIBUTORY LIABILITY THEORY.

18             **THE COURT:**  OKAY.  WHICH YOU HAVE NOT ASSERTED?

19             **MR. ALKANA:**  MY READING OF THE COMPLAINT IS NO, IT'S

20    NOT BEEN ASSERTED.

21             **THE COURT:**  OKAY.

22             **MR. ALKANA:**  I THINK A FAIR READING OF THE COMPLAINT IS

23    THAT THEY ARE ALL DIRECT INFRINGEMENT CLAIMS.

24             **THE COURT:**  IS THAT WHAT WAS INTENDED?

25             **MR. ALKANA:**  YES.

 1             **THE COURT:**  OKAY.  ALL RIGHT.  IS THERE ANYTHING ELSE?

 2             **MR. ALKANA:**  NO.  I DON'T THINK THERE'S ANY REAL HARM

 3    TO THE DEFENDANT IN THIS CASE IF THE PLAINTIFF IS GIVEN ANOTHER

 4    CHANCE TO AMEND.  THIS IS THE FIRST HEARING ON THE MOTION TO

 5    DISMISS.  THERE HAS BEEN OBVIOUSLY PRIOR PLEADINGS, BUT IN TERMS

 6    OF THE ASSERTIONS BY THE PLAINTIFF I THINK THE PLAINTIFF'S CLAIMS

 7    CAN BE STATED.

 8        I THINK THE PLAINTIFF'S CLAIMS ARE MERITORIOUS.  I THINK THE

 9    PLAINTIFF'S CLAIMS ARE SUBSTANTIAL.

10             **THE COURT:**  AND AS TO SAMSUNG WHAT WOULD AN AMENDED

11    COMPLAINT ASSERT?

12             **MR. ALKANA:**  WELL, IT WOULD BE FAR MORE SPECIFIC IN

13    TERMS OF OUR CONTENTIONS WITH REGARD TO DIRECT INFRINGEMENT

14    BECAUSE I THINK THAT THERE IS A DIRECT INFRINGEMENT CLAIM.  AND

15    AS TO CONTRIBUTORY INFRINGEMENT, IT WOULD BE FAR MORE DIRECT IN

16    TERMS OF THE NOTICE.

17             **THE COURT:**  SO YOU WOULD LIKE LEAVE TO ADD A CLAIM FOR

18    CONTRIBUTORY INFRINGEMENT.

19             **MR. ALKANA:**  I WOULD, YES.

20             **THE COURT:**  BECAUSE, AS YOU SAID, IT DOES NOT CLEARLY

21    ASSERT ONE NOW.

22             **MR. ALKANA:**  YES, THAT'S CORRECT, YOUR HONOR.

23             **THE COURT:**  OKAY.  AND AS TO THE DEFENDANTS' KNOWLEDGE,

24    WHAT ADDITIONAL INFORMATION WOULD YOU ADD?

25             **MR. ALKANA:**  I WOULD GO BACK AND OBTAIN THE E-MAILS, OR

1    EXCUSE ME, THE PRIOR COMMUNICATIONS TO ATTACH THOSE AS EXHIBITS.

2              **THE COURT:**  ALL RIGHT.

3              **MR. ALKANA:**  THANK YOU, YOUR HONOR.

4              **THE COURT:**  IS THERE ANYTHING ELSE?  DID YOU WISH TO

5    RESPOND?

6              **MR. ULIN:**  VERY BRIEFLY, YOUR HONOR.  WITH RESPECT TO

7    GOING BACK AND GETTING ADDITIONAL EXHIBITS AND INFORMATION THIS

8    IS EXACTLY WHAT THEY TOLD JUDGE NEUGENT MONTHS AGO.  AND THEN

9    THEY CAME FORWARD WITH HIS SECOND-AMENDED COMPLAINT.  AND THEN,

10   IN RESPONSE TO THIS MOTION TO DISMISS THEY CAME FORWARD WITH

11   ADDITIONAL EXHIBITS, NONE OF WHICH ESTABLISHED EITHER DIRECT

12   LIABILITY OR CONTRIBUTORY TRADEMARK INFRINGEMENT FOR SAMSUNG,

13   FAILING TO ESTABLISH EITHER OUR USE OF THE MARK, OR TO ESTABLISH

14   THE REQUISITE KNOWLEDGE AND CONTROL, OR TO SUBSTANTIATE AN

15   ALLEGATION OF THOSE ELEMENTS THAT ARE ESSENTIAL TO SECONDARY

16   TRADEMARK INFRINGEMENT.

17       JUST TWO QUICK POINTS.  ONE WITH RESPECT TO THE 2011 LETTER,

18   WHICH IS NOW BEEN CITED AS JUST AN EXAMPLE OF COMMUNICATIONS,

19   WHAT IT APPEARS PLAINTIFF IS SUGGESTING IS THAT THERE'S SOME SORT

20   OF GENERALIZED NOTICE GIVEN TO SAMSUNG WITH RESPECT TO THE

21   EXISTENCE OF INFRINGING GAMES OUT THERE IN THE MARKETPLACE, WHICH

22   IS EXACTLY WHAT PERFECT TEN AND TIFFANY VERSUS EBAY SAID IS NOT

23   SUFFICIENT TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK LIABILITY.

24       AND THEN, SECONDLY, WITH RESPECT TO THE QUESTION OF WHETHER

25   SAMSUNG ADVERTISED A PHONE THAT COULD PLAY THE FREE KICK MASTER

1   APP, FIRST OF ALL I'M NOT QUITE SURE WHAT THAT MEANS.  I'M SURE

2   WE ADVERTISED PHONES AND DEVICES.  YOU KNOW, WHETHER THERE'S AN

3   ALLEGATION THAT THOSE ADVERTISEMENTS ACTUALLY CONTAINED REFERENCE

4   TO FREE KICK MASTER, THERE CERTAINLY HASN'T BEEN ANY THAT HAS

5   BEEN MADE THUS FAR, AND THERE'S BEEN NOTHING THAT HAS BEEN PUT

6   FORWARD IN CONNECTION WITH THE MOTIONS OR ATTACHED TO THE PRIOR

7   COMPLAINTS THAT WOULD SUBSTANTIATE THAT ALLEGATION.

8          IN FACT, THE ALLEGATION IN THE COMPLAINT THAT SUGGESTS THAT

9   THERE HAS BEEN ADVERTISEMENT BY SAMSUNG OF FREE KICK MASTER GAMES

10  IS MADE WITH SPECIFIC REFERENCE TO EXHIBIT EIGHT TO THE

11  COMPLAINT, WHICH PLAINTIFF ACKNOWLEDGES IS A THIRD-PARTY WEBSITE

12  TOTALLY UNASSOCIATED WITH SAMSUNG.

13         SO THE VERY DOCUMENTS THAT THE PLAINTIFF HAS PUT BEFORE THE

14  COURT IN CONNECTION WITH ITS COMPLAINT AND WITH THIS MOTION BELIE

15  THAT CLAIM AND THE CLAIM THAT IT COULD POSSIBLY SUSTAIN AN

16  AMENDMENT THAT WOULD BE VALID.

17              **THE COURT:**  OKAY.  ALL RIGHT.

18              **MR. PAGE:**  THANK YOU.

19              **THE COURT:**  ALL RIGHT.  MATTER STANDS SUBMITTED.

20              (THEREUPON, THIS HEARING WAS CONCLUDED.)

21

22

23

24

25

1    STENOGRAPHY CERTIFICATION

2         "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
3         NOVEMBER 17, 2015
          KATHERINE WYATT
4    _____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25