UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREE KICK MASTER LLC, et al.,

        Plaintiffs,

      v.

APPLE INC, et al.,

        Defendants.

Case No.  15-cv-3403-PJH

**ORDER GRANTING MOTIONS TO DISMISS**

     Defendants' motions to dismiss the third amended complaint ("TAC") came on for hearing before this court on February 17, 2016.  Plaintiff and counterdefendant Free Kick Master LLC and plaintiff Free Kick Master Junior LLC appeared by their counsel Stanley L. Josselson, Val Schurowliew, and Eugene Alkana; defendants Amazon.com Inc. ("Amazon") and Google Inc. ("Google") appeared by their counsel Michael H. Page; defendant and counterclaimant Apple Inc. ("Apple") appeared by its counsel David R. Eberhart; and defendant Samsung Electronics USA ("Samsung") appeared by its counsel John C. Ulin.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions.

BACKGROUND

     This is a case alleging trademark infringement.  Plaintiff Free Kick Master LLC asserts ownership of the "Free Kick Master" mark, and plaintiff Free Kick Master Junior LLC asserts ownership of the "Free Kick Master Junior" mark.  TAC ¶¶ 1, 2,16-20.

1  Plaintiffs allege that the Free Kick Master mark was "intended for use by Free Kick

2  Master LLC in the production of television shows and sports movies, radio and television

3  programs, namely sports program production, film production, organization of sports

4  events, and organizing sporting events, including soccer football games[,]" and was

5  "intended to extend to the production of computer games and applications."  TAC ¶¶ 18-

6  19.  Plaintiffs allege that the Free Kick Master Junior mark "is for use in 'Board games:

7  . . . Toy, namely battery powered computer game [sic] with LCD screen which features

8  animation and sound effects.'"  TAC ¶ 20.

9        Through its AppStore, Apple provides the owners of Apple devices such as

10  iPhones and iPads the ability to download various applications ("apps") or games, and

11  allegedly allows third-party developers of apps for use on Apple devices to use "Apple

12  Software" to develop those apps.  TAC ¶¶ 33, 38.  Similarly, Amazon operates the

13  Amazon Appstore, through which it allows customers to obtain apps for its Kindle

14  devices.  TAC ¶¶ 89-91.  Google operates Google Play, which is a distribution platform

15  for apps developed for use with the Android operating system.  TAC ¶ 105.  Most of the

16  apps that are available from Apple, Amazon, and Google are developed by third-party

17  developers.

18        Samsung sells electronic devices and products – including the Galaxy mobile

19  devices – on the Internet and in stores and electronics outlets.  TAC ¶ 116.  Samsung's

20  electronic devices and products allegedly "can accommodate and accept" apps, including

21  apps developed by third-party developers which "feature[e]" the Free Kick Master mark.

22  TAC ¶ 116-118.  Samsung allegedly affords developers of apps and websites featuring

23  those apps the ability to make the apps compatible with Samsung devices.  TAC ¶ 119.

24        Plaintiffs allege that apps/games containing the "Free Kick Master" title were

25  developed by third parties and sold, distributed, and/or promoted by Apple, Amazon,

26  Google, and Samsung.  See TAC ¶¶ 21, 35-36, 89-91, 105-107, 116-119.  They claim

27  that this use of Free Kick Master apps/games "in the State of California and the rest of

28  the world is without authorization or consent from [p]laintiffs" and that it "causes a

2

1    likelihood of confusion, mistake, or deception in the minds of the public."  TAC ¶¶ 21-22.

2          Two non-parties – foreign nationals Slobodan Petrovic and Miroslav Nestorovic –

3    assert in affidavits attached to the TAC that they are involved to some extent with Free

4    Kick Master LLC.  See TAC ¶ 32 & Exh. XIX.  Mr. Petrovic claims to be a "director" of

5    Free Kick Master LLC, and Mr. Nestorovic claims to be a FIFA soccer agent in Spain,

6    and contends that he was involved in attempting to sign soccer players up for various

7    "Free Kick Master" events in 2010, 2012, and 2013.  TAC Exh. XIX.

8          Plaintiffs assert that an internationally televised Free Kick Master event, at which

9    famous soccer players appeared and which was attended by more than 45,000

10   spectators, was held in July 2008 in Houston Texas.  TAC ¶ 24.  Plaintiffs claim that a

11   similar event was scheduled for 2010 at the MGM Grand Garden Arena in Las Vegas,

12   Nevada, but was cancelled because MGM began "facing bankruptcy issues."  TAC ¶ 26.

13   They also assert that a 2012 Free Kick Master event in Buenos Aires, Argentina, "was in

14   the planning stages, with many famous soccer players making commitments to

15   participate in the game."  TAC ¶ 27.

16         In addition, according to plaintiffs, a Free Kick Master event "was to be held in

17   2013 at the SunLife Stadium," but it "was never held because sponsors withdrew support,

18   in part, indicating that the prospects for profit from development of Free Kick Master or

19   Free Kick Master Junior computer games and 'apps' would not be profitable since

20   companies like the instant [d]efendants were involved in developing, marketing,

21   distributing, authorizing, and certifying 'Free Kick Master' apps and downloads mimicking

22   the previous Free Kick Master sporting events described above."  TAC ¶ 30.  Another

23   Free Kick Master event for 2014 "was in the planning stages, along with rules governing

24   the games, physical board games, electronic games, watches, and other memorabilia."

25   TAC ¶ 31.

26         Plaintiffs allege that they have developed products based on the Free Kick Master

27   events, including electronic and board games and watches.  See TAC ¶¶ 23, 25, 28.

28   Plaintiffs assert that the format and rules of the apps/games that are available on

United States District Court
Northern District of California

3

1    defendants' sites are similar to the format and rules utilized in plaintiffs' game and events,

2    and that this similarity is "a source of confusion to the public as to the source and origin of

3    the applications and downloads."  TAC ¶ 25.

4        Plaintiffs claim that their agents' "attempts to communicate with [d]efendants have

5    been fruitless" and "have been ignored."  TAC ¶ 32.  In his affidavit, Mr. Petrovic states

6    that he "was calling by phone, on several occasions, different offices of Google, Inc.,

7    Apple Inc., Amazon, Inc., and Samsung Inc., etc., informing officials to whom I was

8    referred about the fact that their companies were using the trademark and format of Free

9    Kick Master without authorization of the owners of trademark, Free Kick Master LLC."

10   TAC Exh. XIX.

11       He asserts further that "[e]ach time when I was calling, I was switched from one

12   department to another as nobody in these above mentioned companies seemed to be

13   responsible for discussing the matter."  He claims that he "was regularly leaving, with the

14   person I was talking to in these companies, my telephone number and e-mail address as

15   I have been promised that person in charge will contact me shortly."  However, he

16   asserts, he never heard back from anyone.  TAC Exh. XIX.

17       Mr. Petrovic claims that he then retained attorney Wilfredo Pesante to "officially

18   inform one by one the mentioned companies who were in infringement with our

19   trademark Free Kick Master."  TAC ¶ 32 & Exhs. XIX, XX.  He claims that Mr. Pesante

20   "sent the official letter to Samsung, Inc., informing them about the problems arised [sic]

21   from their unauthorized use of our trademark," but that Samsung did not respond.  TAC

22   Exh. XIX.  A copy of a letter from Mr. Pesante to the CEO of Samsung's parent

23   corporation in South Korea, dated March 9, 2011, is attached to the TAC as Exhibit XX.

24   Mr. Petrovic asserts that even after he retained counsel to file the present action against

25   defendants, "all of them continued until October 2015 to distribute Free Kick Master

26   electronic game."  TAC Exh. XIX.

27       Mr. Nestorovic states in his affidavit that he is an "official FIFA soccer agent," and

28   that "together with Mr. Slobodan Petrovic, director of Free Kick Master LLC," he was

United States District Court
Northern District of California

4

1   "calling and trying to inform several times, Google, Inc., Apple, Inc., Samsung, Inc., and

2   Amazon, Inc., that they were not unauthorized [sic] to use brand Free Kick Master, duly

3   registered with USPTO by Free Kick Master LLC."  He claims that "[u]sually, every call

4   was ending in a way that officials who I was contacting were passing me on different

5   departments and nobody during those conversations looked as right person responsible

6   even to talk to me."  He states that "[o]ften, I was told to leave my e-mail address and

7   telephone number and that somebody from legal department will contact me," but that

8   "[e]ventually, nobody from any of these companies contacted me . . . ."  TAC Exh. XIX.

9        Mr. Nestorovic asserts further that "quite a few of the players who I was trying to

10  sign for the Free Kick Master events supposed to be held in 2010 [and later] in Las

11  Vegas, Miami, Argentina, and Singapore, were through their representatives asking for

12  clarification, before signing their participation agreements, of who is the legitimate party

13  with whom, through my introduction, they were going to sign the agreements" – whether

14  the agreements "should be signed with Free Kick Master LLC" or with "Google, Apple,

15  Samsung, or Amazon, who were present all around internet as the distributors of Free

16  Kick Master electronic game."  TAC Exh. XIX.

17       Free Kick Master LLC filed the original complaint in this action on April 14, 2015, in

18  the Northern District of Ohio, asserting claims of trademark infringement and false

19  designation of origin under the Lanham Act; deceptive trade practices under Ohio

20  statutory and common law; and unfair competition and injury to business reputation under

21  Ohio common law.  The original complaint sought only injunctive relief.  On May 12,

22  2015, Free Kick Master LLC filed a first amended complaint, asserting the same causes

23  of action, but seeking injunctive relief and damages.

24       After the action was transferred to this court on July 23, 2015, Free Kick Master

25  LLC filed a second amended complaint, alleging six causes of action, against all

26  defendants:  (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114;

27  (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)); (3) injunctive

28  relief; (4) common law trademark infringement; (5) unfair, unlawful, and fraudulent

United States District Court
Northern District of California

1    business practices under California Business & Professions Code § 17200; and (6) false

2    advertising under California Business & Professions Code § 17500.  On August 20, 2015,

3    Amazon and Google filed a motion to dismiss the SAC; Apple filed an answer and

4    counterclaim; and Samsung filed a motion to dismiss.  Free Kick Master LLC filed an

5    answer to Apple's counterclaim on September 3, 2015.

6          On October 19, 2015, the court issued an order granting the motions to dismiss.

7    With regard to the Amazon/Google motion, the court dismissed the claims of direct

8    infringement under the Lanham Act (first and second causes of action) because plaintiff

9    had failed to allege facts showing that Amazon or Google had in fact "used" the mark or

10   that that "use" created a likelihood of confusion.  The court also noted that plaintiff had

11   effectively conceded that it could not state a claim of direct infringement against Amazon

12   or Google.

13         The court found further that the SAC did not mention contributory infringement or

14   allege facts sufficient to state a claim for contributory infringement.  Nevertheless,

15   because the court had not previously ruled on the adequacy of plaintiff's claims, it

16   allowed leave to amend to plead contributory infringement.  As for the state law claims,

17   the court found that they were barred by § 230 of the Communications Decency Act

18   ("CDA"), 47 U.S.C. § 230.

19         With regard to Samsung's motion, the court found, as with the claims asserted

20   against Amazon/Google, that plaintiff had conceded it was pursuing a theory of

21   contributory trademark infringement – not direct infringement – against Samsung, but that

22   plaintiff had alleged no facts sufficient to state a claim for contributory infringement.  The

23   court granted leave to amend to attempt to plead a claim for contributory infringement.

24   The court also found that the state law claims failed to state a claim as to Samsung, but

25   granted leave to amend to attempt to state a claim for common law trademark

26   infringement, and to state a claim under the "unlawful" and "unfair" prongs of  § 17200,

27   and under § 17500.

28

                                                6

1    The TAC was filed on November 16, 2015 by Free Kick Master LLC and a second

2    plaintiff, Free Kick Master Junior LLC.  Plaintiffs reallege the same six causes of action

3    against Apple, and also assert claims of contributory infringement against Amazon and

4    Google, and contributory infringement and the three state-law causes of action against

5    Samsung.  Apple, Amazon/Google, and Samsung now seek an order dismissing all

6    claims asserted against them, for failure to state a claim.

**DISCUSSION**

A.    Legal Standard

9    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

10   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d

11   1191, 1199-1200 (9th Cir. 2003).  Review is generally limited to the contents of the

12   complaint, although the court can also consider a document on which the complaint relies

13   if the document is central to the claims asserted in the complaint, and no party questions

14   the authenticity of the document.  See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir.

15   2007).

16   To survive a motion to dismiss for failure to state a claim, a complaint generally

17   must satisfy only the minimal notice pleading requirements of Federal Rule of Civil

18   Procedure 8, which requires that a complaint include a "short and plain statement of the

19   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint

20   may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to

21   state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable

22   legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

23   While the court is to accept as true all the factual allegations in the complaint,

24   legally conclusory statements, not supported by actual factual allegations, need not be

25   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); see also In re Gilead Scis.

26   Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  The allegations in the complaint "must

27   be enough to raise a right to relief above the speculative level[,]" and a motion to dismiss

28   should be granted if the complaint does not proffer enough facts to state a claim for relief

7

1  that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59

2  (2007) (citations and quotations omitted).

3          A claim has facial plausibility when the plaintiff pleads factual content that allows

4  the court to draw the reasonable inference that the defendant is liable for the misconduct

5  alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  However, "where the well-pleaded

6  facts do not permit the court to infer more than the mere possibility of misconduct, the

7  complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id.

8  at 679.  Where dismissal is warranted, it is generally without prejudice, unless it is clear

9  the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006,

10  1013 (9th Cir. 2005).

11  B.     Defendants' Motions

12          1.      Whether the claims are time-barred.

13          Defendants argue that the claims asserted against them are untimely, based on

14  doctrine of laches and/or applicable statutes of limitation.  They assert that the allegations

15  in the TAC and the attached exhibits establish that plaintiffs knew of the alleged

16  infringement before March 2011, which was more than four years prior to the filing of the

17  original complaint.

18          Defendants point to the March 9, 2011, letter from Mr. Pesante to Samsung's

19  parent corporation in South Korea, and to the assertion in the Petrovic affidavit that the

20  March 9, 2011 letter was sent "[a]fter quite a few telephone conversations" with the

21  defendants.  Based on this, defendants contend that plaintiffs have effectively

22  acknowledged that they were aware of the allegedly infringing games/apps well before

23  March 9, 2011 – yet they delayed in commencing this action until April 15, 2015.

24  Defendants assert that in light of these allegations, the Lanham Act claims are barred by

25  the doctrine of laches, and the state law claims are barred by the applicable statutes of

26  limitation.

27          In opposition, plaintiffs assert that it is improper for the court to make a

28  determination, on a Rule 12(b)(6) motion, as to the applicability of the doctrine of laches,

United States District Court
Northern District of California

1    because laches is a fact-sensitive inquiry which requires full development of the record.

2    They also contend that dismissal of the state-law claims based on the statutes of

3    limitations is improper by virtue of application of the "continuing violations" doctrine.  They

4    assert that because the alleged infringement was "ongoing" and involved a "course of

5    conduct actionable in its entirety," and because as of the time of the filing of the original

6    complaint in April 2015, defendants were still "distributing" and "advertising" the Free Kick

7    Master electronic games, the running of the statute of limitations should not be a bar to

8    the state law claims.

9         The court finds that the motions to dismiss the TAC as untimely must be

10   GRANTED.  In federal court, federal law determines when a claim accrues.  Lukovsky v.

11   City & Cnty. of S.F., 535 F.3d 1044, 1048 (9th Cir. 2008).  This is true even when state

12   law determines the relevant limitations period.  See Azer v. Connell, 306 F.3d 930, 936

13   (9th Cir. 2002).  Accrual is the date on which the statute of limitations begins to run;

14   under federal law a claim accrues when "the plaintiff knows or has reason to know of the

15   injury which is the basis of the action."  Id. (citations and quotations omitted); see also

16   TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

17        The Lanham Act does not specify a limitations period.  When a federal statute

18   lacks a specific statute of limitations, courts, including the Ninth Circuit, "generally

19   presume that Congress intended to 'borrow' the limitations period from the most closely

20   analogous action under state law."  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d

21   829, 836 (9th Cir. 2002).  Here, defendants argue (and plaintiffs do not dispute) that

22   because the case was originally filed in Ohio, the law of the State of Ohio provides the

23   most analogous state statute of limitations.  See Hooper v. Lockheed Martin Corp., 688

24   F.3d 1037, 1046 (9th Cir. 2012).  Ohio's most analogous statute for Lanham Act claims

25   provides a two-year limitations period.  See Sherwin-Williams Co. v. Wooster Brush Co.,

26   2015 WL 1471617, at *8 (N.D. Ohio Mar. 31, 2015) (citing O.R.C. 2305.10); see also Old

27   Tyme Remedies, LLC v. Amish Origins, LLC, 2015 WL 1472056, at *4 (N.D. Ohio Mar.

28   31, 2015) (same).

United States District Court
Northern District of California

1    The court finds that plaintiffs' Lanham Act claims are barred by the doctrine of

2    laches, based on the running of the analogous state statute of limitations.  "Laches is an

3    equitable time limitation on a party's right to bring suit and is a valid defense to Lanham

4    Act claims."  Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1138 (9th Cir. 2006)

5    (citations and internal quotations omitted).  Laches can bar recovery in a trademark

6    infringement action where either injunctive relief or damages is sought.  Grupo Gigante

7    SA de CV v. Dallo & Co., 391 F.3d 1088, 1101 (9th Cir. 2004); see also Jarrow Formulas,

8    304 F.3d at 836-37.

9    This defense embodies the principle that a plaintiff cannot sit on the knowledge

10   that another company is using its trademark, and then later come forward and seek to

11   enforce its rights.  Grupo Gigante, 391 F.3d at 1102-03.  "The limitations period for laches

12   starts when the plaintiff knew or should have known about its potential cause of action."

13   Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc., 559 F.3d 985, 990 (9th Cir.

14   2009) (citations and internal quotations omitted); see also Tillamook Cnty. Smoker, Inc. v.

15   Tillamook Cnty. Creamery Assoc., 465 F.3d 1102 (9th Cir. 2006).

16   For a suit to be barred by laches, the defendant must show that plaintiff's delay in

17   filing suit was unreasonable, and that defendant would suffer prejudice caused by the

18   delay if the suit were to continue.  Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.,

19   603 F.3d 1133, 1139 (9th Cir. 2010); see also Jarrow Formulas, 304 F.3d at 838.  In

20   addition, "[i]f a Lanham Act claim is filed within the analogous state statute of limitations

21   period, the strong presumption is that laches is inapplicable; if the claim is filed after the

22   analogous limitations period has expired, the presumption is that laches is a bar to suit."

23   Au-Tomotive Gold, 603 F.3d at 1139-40.

24   Here, while the Petrovic and Nestorovic affidavits are vague in the extreme – as

25   they do not say when Mr. Petrovic and Mr. Nestoriovic first discovered the alleged

26   infringement, when Mr. Petrovic and Mr. Nestorovic made the phone calls to the

27   defendants, which numbers or offices they called, whom they spoke to, nor when they

28   contacted the attorney Wilfredo Pesante – plaintiffs do allege in the TAC that the Free

United States District Court
Northern District of California

1    Kick Master app "has been available" for use on iPhones and iPads "since 2011." TAC

2    ¶ 35.

3              In addition, Mr. Petrovic claims that it was only after he received no response from

4    any of the defendants that he decided to engage Mr. Pesante, and that it was only after

5    "quite a few telephone conversations" that Mr. Pesante decided to send the March 9,

6    2011 letter to Samsung.  When Mr. Pesante received no response to that letter, plaintiffs

7    decided to retain other counsel, who filed the present action.  The letter to Samsung does

8    not state when plaintiffs became aware of the alleged infringement.  However, the

9    allegations in the TAC, taken together with the March 2011 letter, makes it clear that

10   plaintiffs were aware of the apps/games in 2010, but certainly no later than February

11   2011.[1]

12             Thus, the original complaint, filed on April 15, 2015, was filed more than four years

13   after plaintiffs first discovered the alleged infringement.  Since the complaint was not filed

14   within the analogous statute of limitations (the two-year Ohio limitations period), there is a

15   strong presumption that laches is a bar to the Lanham Act claims.  See Au-Tomotive

16   Gold, 603 F.3d at 1139-40; Miller, 454 F.3d at 997.

17             In addition, it was unreasonable for plaintiffs to delay filing suit until April 2015.  In

18   considering whether a plaintiff's delay was unreasonable, courts consider (1) the length

19   of the delay, measured from the time the plaintiff knew or should have known about his

20   potential cause of action, and (2) whether the plaintiff's delay was reasonable, including

21   whether the plaintiff has proffered a legitimate excuse for his delay.  See Miller, 454 F.3d

22   _____

23   [1]  Mr. Nestorovic's affidavit shows that plaintiffs were aware of the allegedly infringing
     apps/games as early as 2010.  Mr. Nestorovic avers that "quite a few of the players" he
24   was "trying to sign for the Free Kick Master events supposed to be held in 2010, 2012,
     2013 in Las Vegas, Miami, Argentina, and Singapore, were through their representatives
25   asking for clarification, before signing their participation agreements, of who is the
     legitimate party which whom . . . they were going to sign the agreements." TAC Exh.
26   XIX.  He adds that "[l]awyers of some of these soccer superstars were confused by the
     fact that the agreements should be signed with Free Kick Master LLC and not, for
27   example with Google, Apple, Samsung, or Amazon, who were present all around internet
     as the distributors of Free Kick Master electronic game, which had the same format as
28   Free Kick Master competition." Exh. XIX.

1    at 997; <u>Jarrow Formulas</u>, 304 F.3d at 838.  Plaintiffs were aware of the alleged

2    infringement by February 2011, at the very latest, and probably as early as 2010.

3    However, they provide no explanation as to the reason for the lengthy delay in filing suit.

4            In addition to establishing that plaintiffs' delay was unreasonable, defendants must

5    also show that they are likely to be prejudiced by the delay.  "Courts have recognized two

6    chief forms of prejudice in the laches context – evidentiary and expectations-based."

7    <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 955 (9th Cir. 2001).  "Evidentiary prejudice

8    includes such things as lost, stale, or degraded evidence, or witnesses whose memories

9    have faded or who have died."  <u>Id.</u>  Expectations-based prejudice derives from a

10   defendant "[taking] actions or [suffering] consequences that it would not have, had the

11   plaintiff brought suit promptly."  <u>Id.</u>  For example, courts have found that a defendant

12   suffers prejudice if, in reliance on plaintiff's delay, she invests labor and capital to build a

13   trademark's goodwill and future value.  <u>See</u>, <u>e.g.</u>, <u>NAACP v. NAACP Legal Def. & Educ.</u>

14   <u>Fund, Inc.</u>, 753 F.2d 131, 138 (D.D. Cir. 1985).  Similarly, a defendant may establish

15   prejudice by showing that as a result of the delay, it may incur additional liability for

16   damages.  <u>Miller</u>, 454 F.3d at 1000.

17           Here, defendants argue that given the vague and imprecise account in the

18   Petrovic and Nestorovic affidavits, and also given plaintiffs' failure to locate any

19   documentary support of the alleged attempts to contact defendants in late 2010 or early

20   2011 (despite plaintiffs' counsel's representation that they would do so), they are likely to

21   suffer prejudice because the passage of time will make it difficult for any of the

22   defendants to locate any record of the alleged phone call(s) in 2010 or early 2011.  They

23   also contend that plaintiffs' delay in filing suit will potentially increase the amount of

24   damages plaintiffs could pursue, for each year of alleged infringement.

25           Defendants have shown that prejudice is likely – both evidentiary prejudice

26   (plaintiffs allege in vague terms that defendants received "notice" via a "phone call"

27   sometime prior to March 2011, but the chances are slight that defendants will be able five

28   years later to track down a record of any such phone call) and expectations-based

prejudice (had plaintiffs timely filed suit, Apple could have ceased distributing the allegedly infringing app sooner, thereby minimizing or completely negating plaintiffs' claims of damages to their goodwill and reputation).  The claim of evidentiary prejudice is further strengthened by plaintiffs' counsel's concession at the hearing on the present motions that counsel have been unable to obtain any documentation or further details of the phone calls allegedly placed by Mssrs. Petrovic and Nestorovic to defendants.

The state-law claims are all barred under the relevant statutes of limitations. Caims under Business & Professions Code § 17500 are subject to the three-year statute of limitations of Code of Civil Procedure § 338.  See Yumul v. Smart Balance, Inc., 733 F.Supp. 2d 1117, 1130 (C.D. Cal. 2010); County of Fresno v. Lehman, 229 Cal. App. 3d 340, 346 (1991).  The statute of limitations for unfair competition claims under Business & Professions Code § 17200 is "four years after the cause of action accrued."  Cal. Bus. & Prof. Code § 17208; see also Karl Storz Endoscopy Am., Inc. v. Surgical Techs, Inc., 285 F.3d 848, 857 (9th Cir. 2002).  Finally, while courts disagree as to whether California's limitation period for common-law trademark claims is two, three, or four years, see Fitbug Ltd. v. Fitbit, Inc., 78 F.3d 1180, 1190 (N.D. Cal. 2015), appeal dismissed per stipulation, No. 15-15341 (9th Cir. Feb. 17, 2016), the claim is time-barred under even the longest of those limitation periods.

There is no merit to plaintiffs' claim that the "continuing violations" doctrine applies to plaintiffs' state-law claims.  The "continuing violations" doctrine is an equitable exception developed and applied mostly in the area of employment and housing discrimination claims.  See Richards v. CH2M Hill, Inc., 26 Cal. 4th 798 (2001); Alch v. Superior Court, 122 Cal. App. 4th 339, 369-376 (2004).  While plaintiffs have cited one case holding that the doctrine may apply to UCL claims based on "the nature of the right sued upon," the court in that case held that it did not apply to the UCL claim at issue. See Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1196 (2013).

Specifically, the Aryeh court held that the doctrine did not apply because plaintiff's case was not one in which "a wrongful course of conduct became apparent through the

13

accumulation of a series of harms," but rather, the plaintiff had conceded that he was aware of the defendant's allegedly fraudulent acts and recognized them as unlawful, outside of the limitations period. Id. Similarly, in the present case, plaintiffs' argument that the infringement had not achieved permanence in 2011 is not credible in light of the claim in the Nestorovic affidavit that by 2010 the accused app had already caused confusion among FIFA players. Once plaintiffs were aware that the Free Kick Master mark was being used on games and apps that were made available for use on defendants' devices, they could and should have taken diligent action, and are not now entitled to claim the benefit of the equitable "continuing violations" doctrine.

       2.       Whether any cause of action in the TAC states a claim

            a.       Claim of direct infringement against Apple

Plaintiffs assert claims of direct infringement under 15 U.S.C. § 1114 and § 1125(a) against Apple. To state a claim of direct trademark infringement, a plaintiff must allege facts sufficient to show (1) that it has valid, protectable trademarks, and (2) that defendant's use of the marks in commerce is likely to cause confusion. See, e.g., Info. Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

In the TAC, plaintiffs allege that a Free Kick Master game developed by a third-party developer infringes their trademark rights, and contend that this game has been available in defendants' on-line stores – including Apple's App Store – since 2011. TAC ¶ 35. Plaintiffs allege that this game has been "advertised by third parties" and its format and rules are similar to the format and rules of the Free Kick Master event that allegedly occurred in 2008. TAC ¶ 36. They assert that the third-party developers used "Apple Software" to develop apps to be playable on Apple devices. TAC ¶ 38. They claim that because Apple requires apps to meet certain guidelines in order to be included in the App Store, Apple "should have known, had every reason to know, and every opportunity to know that it was helping develop, certifying, and marketing infringing products," and that Apple "ignored communications from [p]laintiff's agents." TAC ¶ 46.

1    Apple argues that the direct infringement claims asserted against it should be

2    dismissed because they are indistinguishable from the direct infringement claims that the

3    court previously dismissed against Amazon/Google and Samsung.  In the October 19,

4    2015 order, the court held that these claims could "only be interpreted as claims of

5    contributory infringement," as they were premised on the availability of certain games in

6    defendants' on-line stores that were developed by third-party developers rather than by

7    codefendants.

8    Here, Apple argues, all the claims are premised on an app or apps that plaintiffs

9    concede were developed by one or more "third party developers" rather than by Apple or

10   any of the defendants in this case (citing TAC ¶¶ 32, 34, 35, 37, 38, 46).  Apple asserts

11   that just as plaintiffs previously attempted to do with the other defendants, they now seek

12   to hold Apple liable because Apple allegedly provides software that third-party developers

13   use to develop apps, promulgates and enforces quality standards for apps available via

14   its App Store, and made a "Free Kick Master" app available for download.  Apple

15   contends  that these claims fail for the same reasons they failed as to the other

16   defendants.[2]

17   In opposition, plaintiffs assert that they can sustain a claim of direct infringement

18   against Apple based on allegations Apple "used" the plaintiffs' mark "in commerce."

19   Plaintiffs point to allegations that apps containing the Free Kick Master mark were

20   "developed, sold, marketed, authorized, certified, and provided free of charge, by or

21   though, or with the cooperation of . . . Apple[,]" TAC ¶ 36; that Apple "in its sole

22   discretion" selects applications for development using Apple Software to be distributed

23   via the App Store, TAC ¶ 40; & Ex. XXII, Section 3.2(g); and that Apple goes well beyond

24   simply hosting third-party content on a website, as it has "direct control and monitoring

25

26   _____

[2]   Apple also argues that for the reasons stated in the court's October 19, 2015 order,
27   § 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars the state-law
     claims asserted against it.  Because the court finds that all plaintiffs' claims are time-
28   barred, and also that none of the claims asserted in the TAC states a claim, the court
     does not address this additional argument regarding CDA immunity.

United States District Court
Northern District of California

1   over every item in its App Store," TAC ¶ 45.  Plaintiffs contend that even if the infringing

2   content did not originate with Apple, its role in hosting and selling the infringing content is

3   sufficient under the plain meaning of "use in commerce."

4          In support of this last argument, plaintiffs cite Sega Enters. Ltd. v. MAPHIA, 948 F.

5   Supp. 923 (N.D. Cal. 1996).  In that case, the plaintiff Sega Enterprises, a prominent

6   developer, manufacturer, and distributor of computer video game systems and computer

7   video game programs sold under the "SEGA" logo, alleged that a defendant's

8   maintenance of an "electronic bulletin board" ("BBS") where users uploaded and

9   downloaded Sega's trademarked video game programs, constituted trademark

10  infringement.  The plaintiff asserted claims of copyright infringement under direct,

11  contributory, and vicarious liability theories.  Id. at 931.

12         Here, plaintiffs contend that the court in Sega held that the defendant's

13  maintenance of the BBS constituted "use in commerce" because the defendant system

14  operator of the BBS knew that the Sega mark identified Sega files, and it appeared when

15  the files were used.  Id. at 928-29.  Plaintiffs argue that Apple's conduct was similar to the

16  conduct of the defendant in Sega in that Apple provides its software to developers to

17  develop apps in its sole discretion, and, in plaintiffs' view, controls and monitors the

18  content to ensure that it conforms to its Licensing Agreement, and also maintains a

19  system that is continuously open to the public.  Plaintiffs assert that just as in Sega, the

20  court in this case should find that allegations regarding Apple's operation of its App Store

21  are sufficient to state a claim for direct infringement because an electronic bulletin board

22  system such as the one at issue in Sega was the "precursor to modern file distribution

23  programs like the App Store."

24         The court finds that the motion to dismiss the claims of direct infringement against

25  Apple must be GRANTED.  The court previously dismissed the claims of direct

26  infringement against Amazon/Google, finding that the claims were all premised on apps

27  that were developed by third-party developers, not by Amazon or Google, and that

28  Amazon/Google had not "used" plaintiffs' marks.  Similarly, plaintiffs' claims in the TAC

16

United States District Court
Northern District of California

1    are all premised on apps that plaintiffs concede were developed by "third-party

2    developers," rather than by Apple.  See TAC ¶¶ 32, 34, 35, 37, 38, 46.

3            Further, plaintiffs are seeking to hold Apple liable because Apple allegedly

4    provides the software third-party developers use to develop apps, promulgates and

5    enforces quality standards for apps available via its App Store, and made a "Free Kick

6    Master" app available for download in that App Store.  See TAC ¶¶ 34-46.  However, the

7    court has already held that such allegations are insufficient to support a claim of direct

8    infringement, and can only be interpreted as claims of contributory infringement.

9            Rather than attempt to distinguish the direct infringement claims previously

10   asserted against the other defendants, plaintiffs here have simply asserted that the

11   issues regarding Apple are "novel" because they concern the "use in commerce" of the

12   Free Kick Master mark.  Plaintiffs raised (and lost) that issue as to Amazon/Google in the

13   opposition to the prior motions to dismiss the SAC.

14           Simply put, the TAC does not state a claim of direct infringement against Apple,

15   because there are no facts pled sufficient to show that Apple used the Free Kick Masters

16   mark in commerce.  Under the Lanham Act, "[t]he term 'use in commerce' means the

17   bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a

18   right in a mark."  15 U.S.C. § 1127.  At most, plaintiffs are attempting to assert a claim of

19   contributory infringement, as their claims are premised on the availability in Apple's App

20   Store of certain apps or games that were developed by third-party developers.

21           The Sega case cited by plaintiffs in support of their argument that they have stated

22   a claim of direct infringement is inapposite.  First, the court in Sega did not analyze the

23   meaning of the phrase "use in commerce."  Second, the court in Sega held that the

24   plaintiff had not established a claim of direct infringement against the BBS system

25   operator – but only as to the users of the BBS (who were not defendants).  See id., 947

26   F.Supp. at 932.  Third, the plaintiff in Sega alleged that the BBS system operator

27   knowingly allowed others to upload and download the electronic games.  Id. at 933.

28

17

Here, plaintiffs have alleged no facts showing that Apple or any defendant used or knowingly allowed others to use plaintiffs' mark in commerce.

                b.     Claims of contributory infringement

                      i.     Apple, Amazon, and Google

Apple, Amazon, and Google argue that the TAC fails to allege facts sufficient to state a claim for contributory infringement.  A manufacturer or distributor can be held liable for the infringing acts of another if it "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement."  Inwood Labs, Inc. v. Ives Labs, Inc., 456 U.S. 844, 853 (1982); see also Louis Vuitton Malletier v. Akanoc Solutions, Inc., 658 F.3d 936, 942 (9th Cir. 2011); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996).  The Ninth Circuit has expanded this rule to impose liability on those who continue to supply a service (as opposed to a product) to one known to be using it in an infringing manner, so long as the service provider is also shown to have "[d]irect control and monitoring of the instrumentality used by a third party to infringe . . . ."  Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 984 (9th Cir. 1999).

Defendants contend that despite the court's clear direction in the October 19, 2015, order, the TAC alleges no facts showing that Apple, Amazon, or Google intentionally induced third-party developers to infringe the plaintiffs' marks, and alleges no facts supporting a plausible inference that any of these defendants knew its third-party developers were infringing the plaintiffs' mark but continued to allow the infringing apps to remain available in the defendants' application stores.

For example, defendants argue, plaintiffs allege that defendants "ignored" or "never answered" communications from "[p]laintiffs' agents," TAC ¶ 46 (Apple), ¶ 101 (Amazon), ¶ 112 (Google), but they fail to support these allegations with any facts. Defendants contend that the Petrovic and Nestorovic affidavits are too vague to enable any plausible inference that Apple, Amazon, or Google knew third parties were infringing plaintiffs' trademarks.  They argue that the affidavits are vague as to when the alleged

United States District Court
Northern District of California

1  notice was provided, as Mr. Petrovic says only that he "called" before plaintiffs' counsel

2  contacted Samsung on March 9, 2011, and Mr. Nestorovic provides no timeframe, but

3  states that he "was calling with" Mr. Petrovic.  They also contend that the affidavits are

4  vague as to who Mr. Petrovic and Mr. Nestorovic called, as they do not identify any

5  number they called, any individual they reached, how they obtained the contact

6  information, or even which of defendants' numerous global offices they contacted.

7      Finally, defendants assert, the affidavits are vague as to what Mssrs. Petrovic and

8  Mr. Nestorovic discussed in the alleged phone calls.  For example, neither Mr. Petrovic

9  nor Mr. Nestorovic states that he identified the allegedly infringing apps in the phone

10  calls.  Defendants argue that  the TAC, taken together with the two affidavits, amounts to

11  nothing more than an allegation that plaintiffs gave notice of something to someone at

12  Apple, Amazon, and/or Google at some time prior to March 2011.  They contend that this

13  is insufficient to state a claim for contributory infringement.

14      In opposition, plaintiffs assert that defendants "should have known of" the

15  contributory infringement, and that defendants were "several times" put on notice of their

16  contributory infringement ("advertising and distributing the Free Kick Master electronic

17  game").  Plaintiffs argue that both Mr. Petrovic and Mr. Nestorovic stated under penalty of

18  perjury that they had "called" all four defendants to inform them they were not authorized

19  to use the "Free Kick Master" mark," and that none of the defendants ever responded or

20  took any further responsibility for discussing the matter.  In plaintiffs' view, "[i]t is not

21  implausible that organizations with 'tens or hundreds of thousands of employees

22  worldwide' would fail to respond to inquiries and telephone messages" and "[t]his

23  experience with governments and large corporations repeats regularly, and 'getting the

24  run-around' is not unheard of."

25      Plaintiffs contend that a defendant cannot claim to have been unaware of

26  infringing content when it in fact was simply being "willfully blind" to ongoing trademark

27  violations.  In support, plaintiffs cite Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259,

28  261-65 (9th Cir. 1996), where the Ninth Circuit adopted the Seventh Circuit's holding in

United States District Court
Northern District of California

1 | Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143 (7th Cir.

2 | 1992), that contributory liability can be imposed if a defendant is "willfully blind" to

3 | ongoing violations.  Plaintiffs also cite Hand & Nail Harmony, Inc. v. Lenguyen, 2013 WL

4 | 7389424 (C.D. Cal. Nov. 19, 2013), where the court relied on the decision in Fonavisa, to

5 | the same effect.  Plaintiffs argue that in this case, defendants "should have known" that

6 | the Free Kick Master app infringed the plaintiffs' trademark because Mr. Petrovic and Mr.

7 | Nestorovic "called" them to inform them of their infringing conduct.  Plaintiffs do not

8 | respond to any of defendants' arguments regarding the vagueness of the affidavits.

9 | The court finds that the motion to dismiss the contributory infringement claims

10 | asserted against Apple, Amazon, and Google for failure to state a claim must be

11 | GRANTED.  First, plaintiffs have made no attempt to allege facts showing that Apple,

12 | Amazon, or Google intentionally induced the third-party developers to infringe plaintiffs'

13 | trademarks.

14 | Nor have plaintiffs alleged facts sufficient to create a plausible claim that Apple

15 | knew or had reason to know about the alleged infringement.  The affidavits are vague

16 | and imprecise, and basically devoid of substance.  And notwithstanding counsel's

17 | representations at the hearing on the motion to dismiss the SAC, the TAC includes no

18 | supporting documents or even allegations of documentary evidence.  The only addition to

19 | the TAC regarding the "knowledge" requirement is the exhibit containing the two

20 | affidavits.

21 | At the hearing on the motion to dismiss the SAC, the court asked plaintiffs'

22 | counsel, "If I were to give you leave to amend on the knowledge issue, what would you

23 | add?"  Plaintiffs' counsel responded, "We would have to speak to everybody associated

24 | with the plaintiff in order to obtain specific facts dealing with phone calls, text messages,

25 | anything that they – any kind of communications that they had with [defendants]."  Sept.

26 | 30, 2015 Transcript (Doc. 95) at 27-28.  Counsel then conceded that they had not done

27 | this before the SAC was filed, but asserted that "we did not think that actual knowledge

28 | was required.  We thought that constructive knowledge was sufficient.  And we felt we

1    had enough as far as constructive knowledge goes because we were able to see that

2    these people had notice from the trademark office and we were able to see that they had

3    all of these vetting procedures for checking the apps." Id. at 28.

4          In other words, plaintiffs' counsel specifically represented at the hearing that if

5    granted leave to amend the contributory infringement claim, plaintiffs would be able to

6    locate documentary evidence so they could allege facts sufficient to support their claim

7    that defendants knew or should have known that the Free Kick Master apps/games were

8    infringing plaintiffs' trademarks.  Nevertheless, they included no such facts in the TAC,

9    relying instead on the Petrovic and Nesorovic affidavits regarding alleged phone calls that

10   occurred prior to March 2011.  And, as noted above, counsel conceded at the hearing on

11   the present motions that they had been unable to obtain any documentation or details of

12   the supposed phone calls to defendants.

13         As for plaintiffs' argument that defendants were "willfully blind," the cases plaintiffs

14   rely on are easily distinguishable.  In Fonavisa, the defendant swap meet that was

15   accused of allowing the sale of counterfeit recordings had previously been raided by the

16   Sheriff's Department for selling counterfeit recordings, and had received subsequent

17   written demands from the Sheriff that it cease doing so.  The court held that there was no

18   dispute that the swap meet operators were aware that vendors at the swap meet were

19   selling counterfeit recordings.  Id., 76 F.3d at 261.  Similarly, in Hand & Nail Harmony, the

20   court relied on Fonavisa, holding that the defendant express delivery company knew that

21   the defendant Chinese manufacturers of counterfeit nail polishes (which infringed the

22   plaintiffs' marks) were using the delivery company to transport the counterfeit goods to

23   the U.S. because the facts alleged showed that the plaintiff had notified the delivery

24   company that the counterfeiters were shipping counterfeit merchandise, and that the

25   delivery company was aware that U.S. Customs had seized one of the prior shipments.

26   Id., 2013 WL 7389424 at *4.

27         In both Fonavisa and Hand & Nail Harmony, the facts alleged were sufficient to

28   show that the defendants were aware of the trademark violations.  Here, by contrast,

21

1   plaintiffs have alleged no facts sufficient to show any knowledge or awareness on the

2   part of Apple, Amazon, or Google.  Accordingly, the claims of contributory infringement

3   against Apple, Amazon, and Google must be dismissed.

4                       ii.      Samsung

5          Samsung is in a slightly different position than Apple, Amazon, and Google.  It

6   does not operate an applications store, where consumers can download apps/games for

7   their electronic devices.  Rather, it manufactures and sells electronic devices

8   incorporating the Android operating system, on which downloaded apps/games can be

9   utilized.

10         Samsung argues that the TAC fails to state a claim for contributory infringement,

11  because plaintiffs allege no facts showing that Samsung provided any product or service

12  to an identified infringer; because they allege no facts showing that Samsung had

13  knowledge of the alleged infringement; and because plaintiffs allege no facts showing

14  that Samsung directly monitored or controlled the instrumentalities of any of the alleged

15  third-party infringement.

16         First, Samsung asserts that at best, the TAC alleges that Samsung affords certain

17  services to app developers who request them, but fails to allege facts showing that any of

18  the third-party developers of the apps in issue (or any of the third-party websites over

19  which the apps were allegedly distributed or sold) actually used any of those services.

20  Samsung notes that plaintiffs identify three services it claims Samsung provided to app

21  developers, but contends that there are no facts pled that show that these services apply

22  to – or were ever used by – the third-party developers (whoever they might be) who are

23  alleged to have infringed plaintiffs' trademarks or that any of the allegedly infringing apps

24  were ever registered for, or offered through, Samsung's Galaxy Apps platform, or that

25  they were offered through a designated Samsung Galaxy website.

26         With regard to whether plaintiffs allege facts showing that Samsung knew about

27  the alleged infringement, Samsung notes that the TAC alleges that Samsung "should

28  have known" of the alleged infringement because of its "vetting process."  See  TAC

¶ 125.  Samsung contends that this "vetting process" concerns procedures applicable to the Developers' Website, the Galaxy Apps distribution platform, and the "designated" Samsung Affiliate websites – and that there are no facts alleged showing that any developer or distributor of any of the purportedly infringing apps in this case ever used the Developers' Website, or sought to distribute the app through Galaxy apps or a designated Samsung Affiliate website.  At most, Samsung argues, the TAC suggests that Samsung reserved the right to determine whether the apps infringed another party's trademark rights, but that this does not constitute an allegation that Samsung actually had knowledge that "identified individuals" were "engaged in continuing infringement."

As for plaintiffs' allegations regarding their "attempts to communicate" with defendants, and their citation to the letter from Mr. Pesante, Samsung notes that when counsel identified this letter at the last hearing as "an example" of the communications between Free Kick Master and Samsung, and the court inquired why plaintiffs had chosen an example that was "irrelevant to the trademark at issue here," plaintiffs' counsel insisted that plaintiffs had "other text messages" and "other communications" showing that plaintiffs had provided notice to Samsung of the alleged infringement at issue here. In the TAC, however, all that plaintiffs have added by way of "facts" is the exhibit with the Petrovic and Nestorovic affidavits, which Samsung argues are insufficient to show notice.

Third, with regard to whether plaintiffs allege facts showing that Samsung directly monitored or controlled the instrumentalities of any of the alleged third-party infringement, Samsung asserts that the only facts alleged are those that relate to the "services" Samsung allegedly offered app developers, and that there is no allegation that any purportedly infringing app ever used the Developers' Website, and no other allegations showing "direct monitoring" or "control" of the instrumentality of infringement.

In opposition, plaintiffs assert that they have stated a claim for contributory infringement because they have alleged that Samsung provided "services" to third-party infringers through the Samsung Developers' Website, and continued to do so after it was put on notice of its contributory infringement of advertising and distributing Free Kick

23

United States District Court
Northern District of California

1  Master apps.  For example, they point to the "Terms and Conditions" which reference a

2  "Remote Test Lab" where a qualifying user can conduct tests of software's suitability or

3  compatibility for certain Samsung devices – which they claim "would have been used to

4  test the various 'Free Kick Master' apps for their suitability or compatibility with various

5  Samsung devices."

6      Plaintiffs also contend that Samsung "certifies" any application that runs on a

7  Galaxy device – which they assert includes the infringing apps.  Plaintiffs claim that

8  Samsung "should have known" that several of the apps it "assisted in developing and

9  certified" had infringed plaintiffs' Free Kick Master mark, because plaintiffs informed

10  Samsung by letter and phone call that it was certifying apps that infringed on the

11  plaintiffs' marks.

12      As for Samsung's argument that the March 2011 Pesante letter is "irrelevant"

13  because it references two apps/games that are not at issue here ("Free Kick Legends"

14  and "Free Kick Carnival"), plaintiffs respond that the letter "clearly states" that "Free Kick

15  Master Limited had become aware that Samsung was marketing video game applications

16  called "Free Kick Legends" and "Free Kick Carnival" and that Free Kick Master LLC has

17  "U.S. registered trademarks protecting the 'Free Kick Master' [mark] and other such

18  variations."

19      In addition, plaintiffs assert, Mr. Petrovic and Mr. Nestorovic both stated under

20  penalty of perjury that they had "called" Samsung to inform it that it was not authorized to

21  use the "Free Kick Master" marks, and that no one from Samsung ever took responsibility

22  for following up.  Plaintiffs assert that under relevant Ninth Circuit authority, these facts

23  are sufficient to show that Samsung knew or should have known of the alleged infringing

24  conduct.  In support, plaintiffs again cite <u>Fonovisa</u> and <u>Hand & Nail Harmony</u>, the cases

25  plaintiffs relied on in the opposition to the other defendants' motions.

26      Plaintiffs have alleged no facts showing that Samsung provided any product or

27  service to an identified infringer, <u>see</u> <u>Tiffany (NJ) Inc. v. eBay, Inc.</u>, 600 F.3d 93, 108 (2nd

28  Cir. 2010), as they plead no facts showing that any third-party developers of the apps

24

1    identified in the TAC ever tested those apps on Samsung Developers or in the Remote

2    Test Lab,  Thus, those services are irrelevant and cannot support the contributory

3    infringement claim.  Further, they have alleged no facts showing that plaintiffs provided

4    notice to Samsung of the alleged infringement.  As for the March 2011 letter, the court

5    previously ruled that it is irrelevant to the claims asserted here, as it identifies only two

6    apps, neither of which uses plaintiffs' marks, and it therefore failed to provide Samsung

7    with the knowledge required to support a claim of contributory infringement.

8          Plaintiffs have provided no other facts to support their claim that they provided

9    Samsung with notice of the alleged infringement, other than the affidavits of Petrovic and

10   Nesterovic, which (as explained above) fail to include any critical details and are

11   therefore insufficient.  Moreover, neither Mr. Petrovic nor Mr. Nesterovic identified any

12   particular app or website that infringed Samsung's trademarks.  Plaintiffs' reliance on

13   Fonavisa and Hand & Nail Harmony is misplaced, as those cases are clearly factually

14   distinguishable, for the reasons stated above.

15         Finally, plaintiffs have failed  to allege facts showing direct monitoring or control.

16   Plaintiffs do not allege that any of the developers of the apps at issue in this case ever

17   used the Samsung Developers website or the Galaxy Apps platform, and thus,

18   Samsung's ability to remove content from Samsung websites (or those of its parent

19   company) have no bearing on the infringement alleged here.  The TAC and its exhibits

20   make clear that the allegedly infringing apps were developed by third parties and made

21   available over third-party websites over which Samsung had no control.

22         As with Apple, Amazon, and Google, the court finds that plaintiffs have failed to

23   state a claim for contributory infringement.  In particular, the TAC does not allege facts

24   sufficient to show that Samsung had knowledge of the alleged infringement.

25              b.      State-law claims asserted against Samsung

26         Samsung contends that plaintiffs' state law claims fail because they are congruent

27   with, and subject to the same analysis as, the Lanham Act claims.  Common law

28   trademark infringement has the same elements as federal trademark infringement.

Kythera Biopharmaceuticals v. Lithera, Inc., 998 F.Supp. 2d 890, 897 (C.D. Cal. 2014). Similarly, state common law claims of unfair competition and actions pursuant to the UCL are substantially congruent to claims made under the Lanham Act.  Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994).

Samsung asserts that because the TAC fails to state a claim under the Lanham Act, it also fails to state a claim of common law infringement (whether direct or contributory) as to Samsung, and that the UCL "unlawful" business practices claim is premised on the alleged Lanham Act violations, and thus fails for the same reasons that the Lanham Act claims fail.  Samsung asserts that the "unfair" business practices claim fails because the requirement that developers pay Samsung 30% of the revenue they receive applies only to Samsung Affiliate websites, but there is no allegation in the TAC that any of the websites that purportedly offer the allegedly infringing apps in this case are Samsung Affiliate websites.

In opposition, plaintiffs argue that the common law trademark and UCL claims are viable for the same reasons that the Lanham Act claims are viable.

The court finds that the motion must be GRANTED.  The common law trademark and UCL claims fail because they are substantially congruent to the Lanham Act claims.

## CONCLUSION

In accordance with the foregoing, defendants' motions to dismiss the claims asserted against them in the TAC are GRANTED.  Because the court finds that further amendment would be futile, the dismissal is WITH PREJUDICE.

No later than March 4, 2016, Apple shall advise the court whether it intends to proceed with its counterclaims against Free Kick Master LLC.

**IT IS SO ORDERED.**

Dated:  February 29, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge

26

United States District Court
Northern District of California